[No. 8257.]

## WOOTTON LAND AND FUEL COMPANY V. JOHN, ET AL.

1. DEEDS—*Confirmatory—Acceptance—Effect.* Controversy existing between two claiming under a common grantor, as to the boundaries of the tract first conveyed, the junior grantee executed a conveyance to the senior, for lands particularly described, expressed to be "in confirmation of" the former conveyance, of "the same lands," from the common grantor. This deed was accepted by the senior grantee. *Held* that by the acceptance of this confirmatory deed the senior grantee was limited to the boundaries set down therein. (311.)

2. —— *Construction—Subsequent Conveyance of Grantee—Effect.* M., being the owner of an extensive tract of lands, executed to W. a conveyance of lands within such tract, by a vague and uncertain boundary. A subsequent grantee of the whole tract, from M., executed to W. a conveyance by particular boundaries, expressed to be in confirmation of the former conveyance of M. Shortly after accepting the confirmatory deed, W. executed a mortgage of his land, describing it precisely as in the confirmatory deed. *Held* in effect, a confession on the part of W. that the confirmatory deed correctly described the land to which he was entitled. (313.)

3. CONTINUANCE—*Absence of Officer of a Corporation Party,* is no ground to continue a cause, where the result depends upon the legal effect of certain muniments of title. (314.)

40.  APPEAL AND ERROR—*Party Bound by Position Below.* A party will not be permitted to depart, in the court of review, from the position assumed below. (314.)

*Error to Las Animas District Court.* Hon CHARLES C. HOL-BROOK, Judge.

Mr. HENRY W. SPANGLER, Mr. HARRY S. SILVERSTEIN, Mr. THOMAS WARD, Jr., for plaintiffs in error.

Mr. JESSE G. NORTHCUTT, Mr, JULIUS C. GUNTER, for defendants in error.

Mr. JUSTICE BAILEY delivered the opinion of the court.

The action is by James M. John against The Wootton Land and Fuel Company, a corporation, etc., and James A. Ownbey, to recover possession of certain premises in Las Animas County, Colorado, described in the complaint, and for damages for their alleged unlawful detention. The court below found the issues for the plaintiff, and against the defendants, and each of them, made specific findings, and entered judgment that plaintiff recover possession of the premises in dispute, and damages in the sum of $1,200.00. The defendants bring the case here for review. For convenience the plaintiffs in error are referred to as defendants, and the defendant in error, James M. John, as plaintiff, deceased, and for whom in this court his heirs at law and administrator have been substituted.

In July, 1911, the plaintiff filed his complaint, alleging that he is the owner in fee of certain lands therein described, in all about 8,400 acres, alleging ouster by defendants on September 1st, 1909, from a portion thereof, and damages because of such ouster. The defendants filed separate answers. That of Ownbey amounts to a general denial, with disclaimer upon his part of any interest in or claim to the property, averring that in all he did respecting the alleged ouster he was acting for and on behalf of the other defend-

ant. The answer of the Wootton Fuel and Land Company, besides containing a general denial, specifically sets forth that it did not take possession of all the lands described in the complaint, and denies that it claimed any of them, except in so far as such lands conflict with lands owned by it, being the lands originally conveyed by deed from one L. B. Maxwell to Richens L. Wootton, under date November 7th, 1867, and as to those lands it denied ownership or possession on the part of the plaintiff, and then specifically claims ownership of those lands, setting forth its chain of title. It also alleges ownership and possession running back to 1867, by it and its predecessors, through open, notorious and adverse possession, and the continued payment of taxes for more than the statutory period. For reply to the separate answer of the Wootton Land and Fuel Company, the plaintiff, John, alleged that Maxwell was the common grantor, and was on November 7th, 1867, the owner of all of the premises described in the defendant's answer, as well as of all the premises described in his complaint, and admitted generally the allegations in the answer with reference to the title papers of the defendant, the Wootton Land and Fuel Company, but denied that any portion of the lands owned by the company, or described in any of the deeds mentioned in its answer, in any way conflicted with, or was any part of the lands which he claimed. The replication further alleges title in the plaintiff by virtue of adverse possession and payment of taxes for seven years, setting up possession in his immediate grantor.

On November 7th, 1867, one L. B. Maxwell was the owner of all the lands in controversy, and also of all the lands described in plaintiff's complaint, known as the John tract, and also of all the lands described in the Maxwell deed to Wootton, known since 1865 as the Wootton tract, or Wootton ranch. This deed, which was recorded on December 15th, 1883, in the public records of Las Animas County reads as follows:

"D. Nomber 7th, 1867.

Knowing All Man by these presents that I have this day bargained and sold to R. L. Wootton Surtin Pason of Land on the North side Raton Mounttgr nowing as Wootton Ranch for the sum of one Dollar in hand paid and the Wrights of Transte on his Toll Road Free of Charges. this pease of land is bounded as Faws: Commencing on Northwest corner at a small Spring about three hundred (300) yeards below his house and Rounde South to the divide of Raton Mountinge, then East along the divide to the mesas, then around the craste of the maser to low spring cross valley to the craste of the Maser Knowing as the Raton Maser, then along of the crast of Maser around the Fisher Peak to Joe Creek, then West down Joes Creek to the plase of binigin said poasl of land contans four 4 seacon more or leass this giving onder my hand and sel on the 7th day of November the 1867.                    L. B. Maxwell.
     Weatles. Jack Holland and Johan Heondson."

The lands therein described, and also those described in the deed to John, were parts of what is known as the Maxwell Land Grant, located in New Mexico and Colorado. In April, 1870, Maxwell conveyed practically all of the Maxwell Land Grant to a corporation known as the Maxwell Land Grant and Railway Company, excepting such portion as had hitherto been conveyed, which were covenanted, not to exceed 15,000 acres, and ultimately the title to the Maxwell Land Grant, by mesne conveyances, in all of which the reservation referred to was made, vested in the Maxwell Land Grant Company.

On February 25th, 1889, the Maxwell Land Grant Company, through its proper officers, made, executed and delivered, to Richens L. Wootton, and the latter accepted, what is described as a confirmatory deed of the Maxwell deed to Wootton of date November 7th, 1867, the material portion of which 1889 deed is in words and figures as follows:

"All that certain tract, piece and parcel of land situate in the County of Las Animas, and State of Colorado, described as follows, to-wit:   Commencing at the Northwest corner of a small spring about three hundred yards below the present residence of the said Richens L. Wootton in the Canon in which the main line of the Atchison, Topeka and Santa Fe Railroad now runs, said Northwest corner in any event not to be more than nine hundred feet below said residence, measured in a straight line, thence west to the foot of the first bluff bordering said Canon on the West side; thence South two (2) miles; thence East two (2) miles; thence North two (2) miles; thence West to the place of beginning, containing in all two thousand five hundred and sixty (2560) acres, more or less.   This deed is made in confirmation of a deed for the same land made by Lucien B. Maxwell to the party of the second part, dated November 7th, A. D. 1867, and for the further consideration of a deed of even date herewith by the said Richens L. Wootton, and his wife, relinquishing to the parties of the first part all bed deposits, and mines of coal in or upon said lands, with the right of way for working them."

Upon the trial of the case to the court without a jury, the trial judge, among other things, found as follows:

"The Court finds that on November 7th, 1867, Lucien B. Maxwell, as L. B. Maxwell, the then owner of the Maxwell Land Grant, made a deed to Richens L. Wootton, as R. L. Wootton, to a portion of said land grant on which the said Wootton then lived, known as the Wootton ranch, which deed was not acknowledged, but was filed for record on December 15th, 1883. * * * The description of the property conveyed in the deed of Maxwell to Wootton was very indefinite, uncertain and imperfect.   While Maxwell and Wootton doubtless understood where the exterior boundary lines of the Wootton tract were intended to be lain in the deed, it would be very difficult for a stranger to determine from the deed, the metes and bounds of the Wootton

tract. However, after the death of Maxwell, and after the Maxwell Land Grant, or a large portion thereof had passed into the possession and ownership of the Maxwell Land Grant Company, that company and the said R. L. Wootton defined and clearly described the boundary lines of the Wootton tract, and on February 25th, 1889, the said Maxwell Land Grant Company, and the board of trustees of said company, made a correction and confirmatory deed of the said Wootton tract to the said Richens L. Wootton, following the definite and certain description then apparently understood and agreed to be the description intended in the deed of 1867, and which correction and confirmatory deed was filed for record March 28th, 1889. It is the opinion of the court from the evidence in this case that the lands conveyed to the plaintiff, and which are in question herein, are in no part included within the exterior boundary lines of the Wootton tract, as definitely and clearly stated in the correction and confirmatory deed."

In the judgment order it was further found:

"That, at the time of the commencement of this action, and at all times mentioned in the complaint of plaintiff, in said cause filed, the plaintiff was, and now is, the owner, in fee, of all and singular the premises, in said complaint described, situate, lying and being in the County of Las Animas, and state of Colorado."

Then follows a description of the land by metes and bounds, which plaintiff claims to own, precisely as set forth and described in his complaint.

These findings are abundantly supported by the evidence, and we approve the construction which the trial judge put upon the so-called confirmatory deed, and are in full accord with him upon the proposition that the so-called Maxwell deed of 1867 is indefinite, uncertain and imperfect in its description. The entire controversy is settled by a consideration of the Maxwell deed, in connection with a proper construction of the confirmatory deed from the Maxwell

company, and this without reference to whether the Maxwell deed of 1867 conveys other than a life estate, that being wholly immaterial, in view of the evident purpose and effect of the confirmatory deed.

The testimony clearly shows that there was a dispute between Wootton and the Maxwell Land Grant Company as to what lands the former was entitled to under the deed of 1867, and that the deed of 1889 was given in settlement of such differences, covering the land claimed under the old deed, as well as in settlement for certain services rendered by Wootton.

Upon the whole record, even if the Maxwell deed should be held to convey a fee title, and even if it could be held that the description therein was sufficiently definite to convey a portion of the land conveyed to plaintiff, including that from which plaintiff was ousted by the defendants, still we are of opinion that the confirmation deed of 1889, which the grantee Wootton accepted, and by the covenants of which he is bound, confines the boundaries of the Wootton lands to the description contained in the latter deed. The confirmation deed, by its express terms, declares that the land conveyed in the 1867 deed is the same land as that described in the confirmation deed. After definitely describing the land thereby conveyed, the confirmation deed contains this clause: "This deed is made in confirmation of a deed for the same land made by Lucien B. Maxwell to the party of the second part, dated November 7th, 1867." It is plainly evident that the words "same land" referred to the land described in the confirmation deed, that is, in the 1889 deed, and the declaration is that this land as described is the same as was intended to be conveyed by the deed of 1867. In other words, it is our view that the 1889 deed is nothing more or less than a correction deed, the purpose of which was to accurately and definitely describe the land which all parties in interest then and there agreed was intended to be conveyed by the deed of 1867. The reference in this confirmation deed to the Max-

well deed is not for the purpose of incorporating the description of that deed; it simply identifies that deed as being a deed the description in which it is sought to correct, making it plain, definite and certain.

There can be but one reasonable construction of the 1889 deed, and that is that no matter what dispute may have theretofore existed between Wootton and the Maxwell company, as to the boundary lines or as to the character of the estate conveyed by the 1867 deed, everything was settled and put at rest by the deed of 1889, so that neither the parties thereto, nor their successors in interest, could thereafter dispute the terms or covenants of that deed, or the description of the land therein contained. With this construction it is plain that Wootton never had any title, except to the land definitely described in the 1889 deed. It is admitted that no part of that land is in conflict with the land conveyed to the plaintiff. Such being the case, the defendant company has no interest whatsoever in the land the possession of which is herein sought by plaintiff, and of which the trial court found him to be the owner. That finding was correct, and the judgment entered should not be disturbed.

No precedent or authority is needed to support the construction given the confirmation deed. As tested by the rule of common sense such must be its purpose and effect. If such is not its purpose and effect, no one has pointed out any other function or office which it can fairly and reasonably be said to perform.

Another significant matter tending to support the foregoing views is the fact that, according to the claim of the defendant company under the 1867 deed, about 5,300 acres of land are conveyed. That instrument contains this clause: "said poasl of land contains four  seacon more or leass." Evidently it was intended to there say that the amount of land thereby conveyed was four sections, more or less. The 5,300 acres, which it is now contended was conveyed by this instrument, in no sense correspond in amount to four sec-

tions, more or less. In the confirmation deed precisely four sections of land, to-wit, 2,560 acres, were conveyed, indicating that that was the amount of land which Wootton understood he got under the 1867 deed, and which he was willing to accept and did accept under the confirmatory deed. As further indicating that the 1889 deed was accepted by Wootton as conveying and correctly describing the land to which he was entitled because of the 1867 deed, his first conveyance after the execution and record of the confirmatory deed was a mortgage given to secure a loan which he had secured, in which mortgage he described his land precisely as it is described in the 1889 deed.

Since we hold that Wootton's title is confined to the land described in the 1889 confirmatory deed, which does not include any land owned by plaintiff, the defendant company's assertion of right, under claim and color of title made in good faith with possession and the payment of taxes for a period longer than the statutory limitation, to a portion of such land is without foundation in law or fact.

Error is also assigned because of the refusal of the court to continue the cause on account of the absence of one of the defendants, Ownbey. The argument offered why a continuance should have been granted is that no other officer of the defendant company was available, and that the assistance, counsel and advice of Ownbey, he being the vice-president and general manager of the company, was necessary for a proper conduct of the trial. There is no showing whatever in the affidavit and motion for a continuance that Ownbey's presence was necessary or desired on account of his knowledge of the facts in a general way, or that his direction, advice or assistance were necessary or desired in the conduct of the trial. The application was made purely on account of the materiality of his testimony, which was set out in the affidavit. It was admitted by plaintiff that if **Ownbey were present** he would so testify. Thus the right of continuance on this ground was removed under the code.

Sec. 194, Code, R. S. 1908. At the trial the application was made on one ground. It is here being urged upon another. There is no authority for such procedure. Furthermore, it is evident that the presence of Ownbey could not have had the slightest effect upon the determination of this controversy upon its merits, as the conclusion reached rests solely upon the legal effect of the muniments of title offered in evidence. The refusal to continue was not error, beside, in any event, no prejudice was or could have been worked by such refusal.

It is urged that in no event was it proper to enter judgment against the defendant Ownbey, because all he did in and about the commission of the alleged entry and ouster was done as an officer, servant and agent of the Wootton Land and Fuel Company, his principal and co-defendant. The suit was to recover possession of land, with damages as an incident. The record shows that the damages assessed were in the nature of rents and profits for unlawful detention. The defendant company alone claimed title and right of possession. Ownbey disclaimed possession or right of possession, or any interest in or claim to the land. There was no wanton or malicious entry. Title was claimed in good faith. That question was determined against the company, and it alone should be held to answer for the damage occasioned by the wrongful detention. Under its peculiar facts, this is not a case where the agent, servant or officer of the company, in whose interest and for whose benefit the possession was taken, may properly be held for the damage occasioned. This is particularly true in view of the fact that plaintiff sets up as the proper measure of damage rents and profits. Therefore, the action in damages was in the nature of an action on an implied contract rather than of tort. 10 Am. & Eng. Enc. Law, 2nd ed., p. 539.

We recognize the rule that an agent or officer of a company may be personally liable for the wilful commission of a tort, though committed on behalf and in the interest of

his principal, but it has no application to the facts of this case.

It is contended that since the judgment and decree vests in plaintiff a fee simple title, unconditionally, that was error, because the record discloses that in the conveyance to John the coal and cement rock deposits are reserved to his grantor, its successors and assigns. Be this as it may, the defendant cannot successfully complain, as it has no interest in the property whatsoever and is unaffected in any right by the judgment and decree.

So far as the defendant Ownbey be concerned the judgment and decree is vacated, set aside and for naught held, but is in all other respects affirmed.

As modified, the judgment is affirmed.

Decision *en banc.*

TELLER, J., not participating.