## No. 15,264.

## MUNRO ET AL. V. ESHE.
(156 P. [2d] 700)

Decided December 4, 1944.   Rehearing denied February 26, 1945.

Mr. FRANK DELANEY, for plaintiffs in error.

Mr. ALLYN COLE, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS action was instituted in the district court of Garfield county by defendant in error, plaintiff below, against one O. A. Dow and the Socony-Vacuum Oil Company, Inc., for the recovery of rentals at the rate of one cent per gallon on gasoline sold, for the use of a filling station situated on a sixty-foot strip of land, the location of which will hereinafter be discussed.

Following the bringing of the action, the Socony-Vacuum Oil Company paid the rentals which it held, into the registry of the court, and the suit against it was dismissed, concerning which there is no complaint. Fred Munro, John R. Munro and M. L. Munro, as surviving members of the last board of directors and as trustees of the Munro Mercantile Company, a defunct Colorado corporation, on motion, were permitted to appear as intervening defendants, and with Dow are here as plaintiffs in error.

The answer of interveners and defendant raised questions as to the ownership of three tracts of land: the sixty-foot strip above mentioned, a 125-foot square tract abutting thereon, and a 250-foot square tract. The trial court found that interveners are the owners of the 125-foot and the 250-foot tracts, and they will not be mentioned further, except as is necessary to elucidate the matter of ownership of the sixty-foot strip, which interveners claim as a way of necessity to the 125-foot tract, and by adverse user. Plaintiff claims through a county treasurer's tax deed, a decree quieting title to the property, several quitclaim deeds, subsequent payment of taxes, and adverse user, under the seven-year statute. '35 C.S.A., c. 40, §143.

June 19, 1911, Arthur Havemeyer received patent from the United States to the south half of the northeast quarter of section 25, township 6 south, range 95 west, and other lands, in Garfield county, Colorado; September 23, 1911, he conveyed this property to Clara H. Havemeyer; October 22, 1912, Clara H. Havemeyer con-

veyed by warranty deed to the county commissioners of Garfield county a strip of land sixty feet wide, located in the southeast quarter of the northeast quarter of section 25, township 6 south, range 95 west, adjacent to, and north of, a certain railroad right of way, and running northeasterly and southwesterly, this deed containing the following: "This strip of land to be used for county road purposes and in the event of use for other purposes shall revert to the grantor." The railroad right of way is 200 feet wide, being 100 feet on each side of a center line, and parallels the sixty-foot strip on the south. The highway as constructed is along the north side of the railroad right of way, but occupies about ten feet of the south edge of the sixty-foot strip. Plaintiff contends that the sixty-foot strip reverted to the grantor because the county had failed to use it for highway purposes.

February 14, 1913, Clara H. Havemeyer deeded to the Munro Mercantile Company a parcel of land 125 feet square in the southeast quarter of the northwest quarter of section 25, township 6 south, range 95 west, and abutting the sixty-foot strip on the north; February 13, 1913, Clara H. Havemeyer deeded said south half of the northeast quarter to Donald M. Forgan, except a store site conveyed to the Munro Mercantile Company, and subject to rights of way for county road, railroad, ditches and telephone lines; July 27, 1916, Forgan conveyed the said property to the Grand River Irrigation and Development Company, subject to the conveyance of a certain lot to the Munro Mercantile Company. November 15, 1909, and prior to the patent from the United States to Havemeyer, the Grand River Irrigation and Development Company had purported to convey to the county commissioners of Garfield county a strip of land sixty feet wide and adjoining the railroad right of way on the northerly side. The trial court held properly that this latter deed was inadmissible in evidence.

After the purchase of the 125-foot square tract in

1913, the Munro Mercantile Company erected a store building thereon, which was used for a period of two or three years, and then was moved to another location. Thereafter, and about the year 1933, one Short installed a gasoline filling station and equipment on the sixty-foot strip, and he and his successors in interest paid rental to interveners for the use of this filling station, and the land adjoining the same, at the rate of one cent per gallon of gasoline sold. July, 1937, defendant entered into an agreement with interveners for the use of said filling station, but before doing so he investigated the situation on the ground, talked to plaintiff, and told her that he contemplated the renting of the station, and she at that time did not indicate that she claimed any interest therein. Subsequently she notified defendant that she was the owner of the sixty-foot strip and demanded payment of the rentals to her. Defendant refused to make further payments either to interveners or to plaintiff, but retained the rentals in his own account at the bank. The agreement between defendant and interveners included for the rental the use of the 125-foot tract, the filling station and equipment located on the sixty-foot strip, and the 250-foot tract and the improvements thereon, located south of the railroad right of way. After defendant had taken possession of these three tracts, plaintiff agreed to pay rental to him at the rate of four dollars per month for use of the improvements on the 250-foot tract.

August 18, 1923, one G. A. Taff, agent, received treasurer's deed from the treasurer of Garfield county to the south half of the northeast quarter of section 25, township 6 south, range 95 west (which description included the sixty-foot strip and the 125-foot square tract), and other property, as a result of the 1914 tax sale for the taxes for the year 1913. This treasurer's deed contains, inter alia, recitals to the effect that the treasurer sold the land to the county on the first day of the sale, which

recitation, it is alleged, under numerous decisions of this court, renders the deed void on its face.

Challenge also is made to the validity of the deed because it was not properly acknowledged, but since that point was not raised below, we disregard it here.

Subsequently, by above mentioned conveyances, Jacob Eshe, husband of plaintiff, acquired a purported title to the property described in the treasurer's deed, although it is apparent that at the time of filing suit plaintiff had no title to the property, the purported title at that time being in Jacob Eshe. During the trial of the case, and after motion had been filed by defendants and interveners for judgment, plaintiff filed what is alleged to be a correction deed, whereby land conveyed by Jacob Eshe to plaintiff, and described as the south half of the northeast quarter of section 35, was claimed to be land known and described as the south half of the northeast quarter of section 25. Interveners and defendants made objection at the time to the admission of the correction deed in evidence, but we think the objections are without merit, as we shall indicate later.

After hearing, the trial judge rendered a written opinion, which appears in the record, in which he found that the two tracts in question, namely, the 125 and 250-foot tracts, belong to interveners, but that the sixty-foot strip, which had been deeded to the county of Garfield for road purposes, belongs to plaintiff, and that therefore defendant should account to plaintiff for rentals at the rate of one cent per gallon on all gasoline sold during the time he had operated the filling station, which rentals amount to $800, of which the Socony-Vacuum Oil Company had deposited the sum of $64.05 into the registry of the court, leaving a net due of $735.95. The trial court then credited, as against this amount due to plaintiff, the sum of $188 on account of rentals due from her for the buildings on the 250-foot tract, leaving a balance of $547.95, and entered

judgment: that the sum of $64.05 in the registry fund of the court be paid to plaintiff; that plaintiff have judgment against defendant for the further sum of $547.95 with interest thereon; that defendant account to plaintiff and pay over to her rentals computed at the rate of one cent per gallon for all gasoline sold by defendant since the 31st day of March, 1942.

Counsel for plaintiffs in error summarizes his specification of points as follows: 1. The treasurer's deed did not confer title. 2. The county is the owner of the sixty-foot strip, or it has reverted to interveners. 3. There was no contract between plaintiff and defendants to pay rent, nor was the amount of rent determined. 4. Plaintiff's motion to dismiss should have been granted. 5. The trial court erred in the admission of certain evidence and in the exclusion of other evidence. We shall consider these in order.

1. Even if it is conceded that the treasurer's deed, upon which plaintiff relies, was invalid upon its face because it recited a sale upon a date other than that fixed by the statute, and so was insufficient to establish the paramount title under the rule announced in *Dussart v. Abdo Merc. Co.*, 57 Colo. 423, 140 Pac. 806, and *Hamer v. Glenn Inv. Co.*, 75 Colo. 423, 226 Pac. 299, and other decisions hereinafter mentioned, it, nevertheless, might constitute color of title under which one who acquires it in good faith may gain absolute title to the lands described therein by subsequent possession and payment of taxes for the period fixed by section 143, chapter 40, supra. It is stated in the opinion in the Dussart case, "The facts in this case force the conclusion that there was an absence of that good faith required by the statute," and a reading of the opinion will disclose the reason for such conclusion. We think good faith is apparent in the case at bar, as will be shown later. As to the Hamer case, the statute of limitations was not involved. Consequently, this case is within the rule set forth in the cases of *De Foresta v.*

*Gast,* 20 Colo. 307, 38 Pac. 244; *Bennet v. North Colo. Springs Land & Improvement Co.,* 23 Colo. 470, 48 Pac. 812 (concerning which, counsel for plaintiffs in error says: "We must concede that a very similar question was before the court"); and· *Jackson v. Larson,* 24 Colo. App. 548, 136 Pac. 81 (concerning which counsel says: "We believe it does support his [counsel for defendant in error] position.")

"The phrase 'color of title' in the statute ['35 C.S.A., c. 40, §143] was before this court for consideration in the case of *De Foresta v. Gast* [supra], * * * and that case may be cited as authority for the proposition that a 'void deed, taken in good faith, may give sufficient color of title' * * * 'The statute (when its conditions are complied with) is intended as a protection to a person holding in good faith under a mere colorable title—that is, under a title which is really no title.'" Bennet case, supra.

The following statement appears in the Jackson case, supra: "It is admitted by counsel that the treasurer's deed is void upon its face, and if offered in evidence to establish the paramount title to the property, that it would be inadmissible. However, in this case it was· offered merely as evidence of color of title." In that case, claimants were permitted to show that they "took possession of the property, fenced it * * * and completed their title by holding under said quitclaim deed in good faith and by paying all taxes legally assessed thereagainst for seven years." In the case at bar, in addition to the tax deed, plaintiff introduced a judgment quieting title, and several quitclaim deeds covering the property. While the judgment in the action to quiet title was not conclusive against the county, under the holdings in the Jackson case, supra, *Marvin v. Witherbee,* 63 Colo. 469, 168 Pac. 651, and *Whitehead, v. Bennett,* 92 Colo. 549, 22 P. (2d) 168, both it and the quitclaim deeds were admissible in evidence as color of title.

■ ■   2.   Whether the county is the owner of the sixty-foot strip, or whether there was a reversion to anyone, we do not decide, because any attempt to so decide would not be binding on the county, it not being a party to this action. But even assuming there was a reversion, it did not inure to the benefit of the interveners, because the reversionary clause provided that it should "revert to the grantor." Other than this claim, the interveners have no title at all, because their asserted title, based upon abutment, fails for proof of abandonment by the county. Their claim of title based upon right of way of necessity failed when the building to which access was required was moved from the land owned by them, and claim based on adverse use was insufficient under any statute. Having no title, interveners may not complain of the weakness of plaintiff's title. *Empire Co. v. Bender,* 49 Colo. 522, 113 Pac. 494; *Bennett v. Morrison,* 78 Colo. 464, 242 Pac. 636. Counsel for interveners says this whole discussion concerning color of title "has to do with an abstract principle of law as applied to this case [because] defendant in error has not shown any of the other elements necessary to come within the provisions of any statute of limitation," but as is obvious, the statute itself, '35 C.S.A., c. 40, §143, supra, makes it necessary that plaintiff show color of title before she may invoke it.

■ ■   3.   As to there being no express contract to pay rent, we assume that there was none. But the issue, as it was tried and determined, and so conceded by counsel for interveners, was, that rent would be paid if it was determined that plaintiff was the owner. As to that phase of the case, the trial court stated: "From all the evidence considered together, our finding is, that defendant agreed with plaintiff to pay her the rental at the accustomed rate, conditional upon her ability to show the right in her to possession of the land upon which the station stands." Regarding plaintiff's title, the court found: "The evidence shows her

title to be good as against the world; with the one possible exception of Garfield county * * *." Whether it was we do not decide, but at least is was good as against these interveners. The circumstances give rise to an implied promise to pay. 66 C.J., p. 89, §13; *Dickson v. Moffit*, 5 Colo. 114; *Wooton Land & Fuel Co. v. John*, 60 Colo. 305, 314, 153 Pac. 686. The evidence concerning that promise was conflicting, hence we do not disturb the court's finding regarding it.

4. The greater part of the motion to dismiss was grounded upon the principles already discussed, but it also was based upon an alleged estoppel, which allegation, we think, has no merit inasmuch as plaintiff was unaware, until the land was surveyed, of the conditions which might have given rise to estoppel. When she did become aware of them, she immediately asserted her rights. The motion to dismiss also included request for judgment because no reply had been filed, particularly to the fifth defense which asserted title in interveners, and which if not challenged would have defeated plaintiff's claim. When this point was urged, counsel for plaintiff asked leave and was granted the right to file a reply which included a general denial, a recitation of facts presumably intended to assert grounds for reliance on the statute of limitations, in addition to facts purporting to establish color of title in the plaintiff. After proof had been offered under the issues tendered, some question arose as to whether the statute of limitations had yet been pleaded, and counsel for plaintiff asked leave to amend by more specificially pleading the statute of limitations, or, as the trial court stated, for the purpose of clarification. As to the right to reply, we think the following statement is in point. "The reply of the plaintiff stated facts which, if established, would defeat the title set up by the defendant, and vest it in her. This pleading was directed entirely to the answer. It constituted no part of the complaint. It did not in any manner depart from the cause of ac-

tion or the case originally pleaded, but was, in effect, an answer, pure and simple, to the issues tendered by the answer of the defendant, upon which he relied to establish his superior right to the premises in dispute. The court did not err in overruling the motion to strike." *Schlageter v. Gude,* 30 Colo. 310, 314, 70 Pac. 428. While the motion in the case just cited was one to strike, instead of one to dismiss because the reply was not filed in time, it still was within the sound discretion of the court to grant it. *Maryland Casualty Co. v. City and County of Denver,* 90 Colo. 20, 6 P. (2d) 6. Objection to the amendment was based primarily on the ground that it changed the theory of the case, presumably from a money demand to an action to quiet title. The trial court did not so construe it, nor do we. The claim remains one for rent. The determination as to the title was, as the trial court said, merely preliminary to plaintiff's right to the rent. The objection dealing with the alleged reversion mentioned in the amendment becomes immaterial in view of the fact that there is no attempted adjudication as to the county. Allowance of the replication and amendment was not inconsistent with any of our rules. The reply as amended sufficiently pleaded the statute under Rule 9 C(h), R.C.P. Colo.

In the case of *Federal Farm Mortgage Corporation v. Schmidt,* 109 Colo. 467, 126 P. (2d) 1036, we held it was proper for one in possession of real estate, even though his title was based in part on an invalid mortgage foreclosure, to invoke the provisions of sections 146-150, c. 40, '35 C.S.A. to establish the marketability of a title. A fortiori such invocation should be allowed where a lesser degree of relief is sought, i.e., merely a superior right to possession, which is all we need to adjudicate between the parties here involved.

Having concluded that plaintiff had color of title sufficient to invoke the statute, section 143, supra, we now proceed to determine whether there was a

30

compliance with its provisions. It requires that the person claiming its benefit must have been in actual possession, under claim and color of title, made in good faith, and who, continuing in such possession, has paid the taxes on the land for the seven years. The record shows that immediately after Taff got his tax deeds he leased all of the land covered thereby to Jacob Eshe, husband of the plaintiff, and Eshe grazed his flocks thereon for many years during the titles of the various owners until he himself became the owner, and until in 1931 when he conveyed to Mrs. Eshe, who continued to use the land for grazing purposes down to the time of the trial. That such use of the land was sufficient continuous possession, see 2 C.J.S. 681 and 686; *Latta v. Clifford,* 47 Fed. (Colo.) 614; *Kellogg v. Huffman,* 137 Cal. App. 278, 30 P. (2d) 593; *Park v. Powers,* 2 Cal. (2d) 590, 42 P. (2d) 75. That all taxes were paid on the property by plaintiff and her predecessors in title and all in good faith is established beyond question.

There was no interference with this possession in any way until Short, as agent for Mus[?], built the filling station in 1933, long after plaintiff rights under the statute had become vested. "No break in his possession after he has acquired title by adverse possession will have any effect on the rights he has acquired thereunder." 2 C.J.S. 682, §125 c. This is so at least against all except the owner. 2 C.J.S. 704. While it is true that plaintiff did not discover that the filling station was actually on her land until 1938 when she had the survey made, the interveners acquired no rights by reason of that fact, but were mere intruders. Interveners do not claim title to the sixty-foot strip. Assuming it is in the county, it is not available to a mere intruder. *French v. Golston,* 105 Colo. 578, 100 P. (2d) 581.

5. As to the alleged improper admission of evidence, counsel for interveners concedes that the

evidence was admitted "principally from the fact that the court concluded that a deed void on its face may nevertheless be good color of title." Since we have shown that the trial court did not err in holding that the various documents relied upon were color of·title it follows that they were admissible in evidence as proof of that fact. *Schlageter v. Gude, supra.* Counsel concedes that his objection is probably immaterial if plaintiff established possession as a part of her direct case, which we think she did, after reply and amendment were filed. As to the correction deed given by Eshe to his wife, the court did not err in admitting it, because it was offered merely to correct what was palpably a scrivener's error, and equity could have reformed it to effectuate the intention of the parties. 18 C.J. 217; *Frizeen v. Swanton,* 148 Ore. 250, 34 P. (2d) 939.

As to the evidence excluded, the court did not err in refusing to receive certain exhibits designed to cast reflection upon plaintiff's title after it became apparent that interveners had neither title nor color of

Judgment affirmed.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE HILLIARD dissenting.

This case now is being determined on rehearing, granted upon petition of defendant in error directed to an opinion of the court, in which, in the main, plaintiffs in error enjoyed favorable resolution. The present opinion, to which I dissent, resolves otherwise. In exposition of my views, I adopt, and set forth, the original court opinion as written by our late distinguished brother, Mr. Justice Goudy. It follows.

This action was instituted in the district court of Garfield county by defendant in error, plaintiff below, against one O. A. Dow and the Socony-Vacuum Oil

Company, Inc., for the recovery of rentals at the rate of one cent per gallon on gasoline sold, for the use of a filling station situated on a sixty-foot strip of land, the location of which will hereinafter be discussed.

Following the bringing of the action, the Socony-Vacuum Oil Company paid the rentals which it held into the registry of the court, and the suit against it was dismissed. Fred Munro, John R. Munro and M. L. Munro, as surviving members of the last board of directors and as trustees of the Munro Mercantile Company, a defunct Colorado corporation, on motion, were permitted to appear as intervening defendants, and with Dow are here as plaintiffs in error.

The action for rentals raised questions as to the ownership of three tracts of land: the sixty-foot strip above mentioned, a 125-foot square tract abutting thereon, and a 250-foot square tract. The trial court found that interveners are the owners of the 125-foot and the 250-foot tracts, and they will not be mentioned further except as is necessary to elucidate the matter of ownership of the sixty-foot strip, which interveners claim as a way of necessity to the 125-foot tract, and by adverse user. Plaintiff claims through a county treasurer's tax deed, a decree quieting title to the property, subsequent payment of taxes, and adverse user. The claim of interveners to a way of necessity, and by adverse user, in the absence of the county commissioners of Garfield county, the holders of the record title to the sixty-foot strip, as parties, will not be considered further.

June 19, 1911, Arthur Havemeyer received patent from the United States to the south half of the northeast quarter of section 25, township 6 south, range 95 west, and other lands, in Garfield county, Colorado; September 23, 1911, he conveyed this property to Clara H. Havemeyer; October 22, 1912, Clara H. Havemeyer conveyed by warranty deed to the county commissioners of Garfield county a strip of land sixty feet

wide, located in the southeast quarter of the northeast quarter of section 25, township 6 south, range 95 west, adjacent to, and north of, a certain railroad right of way, and running northeasterly and southwesterly, this deed containing the following: "This strip of land to be used for county road purposes and in the event of use for other purposes shall revert to the grantor." The railroad right of way is 200 feet wide, being 100 feet on each side of a center line, and parallels the sixty-foot strip on the south. The highway as constructed is along the north side of the railroad right of way, but occupies about ten feet of the south edge of the sixty-foot strip. Plaintiff contends that the sixty-foot strip reverted to the grantor because the county had failed to use it for highway purposes, but the county commissioners are not parties here, and this contention is unimportant because of our view of the case as hereinafter expressed, and will not be noticed further.

February 14, 1913, Clara H. Havemeyer deeded to the Munro Mercantile Company a parcel of land 125 feet square in the southeast quarter of the northwest quarter of section 25, township 6 south, range 95 west, and abutting the sixty-foot strip on the north; February 13, 1913, Clara H. Havemeyer deeded said south half of the northeast quarter to Donald M. Forgan, except a store site conveyed to the Munro Mercantile Company, and subject to rights of way for county road, railroad, ditches, and telephone lines; July 27, 1916, Forgan conveyed the said property to the Grand River Irrigation and Development Company, subject to the conveyance of a certain lot to the Munro Mercantile Company. November 15, 1909, and prior to the patent from the United States to Havemeyer, the Grand River Irrigation and Development Company had purported to convey to the county commissioners of Garfield county a strip of land sixty feet wide and adjoining the railroad right of way on the northerly side. The trial court

held that this latter deed was inadmissible in evidence, and we do not disturb that ruling.

After the purchase of the 125-foot square tract in 1913, the Munro Mercantile Company erected a store building thereon, which was used for a period of two or three years, and then was moved to another location. Thereafter, and about the year 1933, one Short installed a gasoline filling station and equipment on the sixty-foot strip, and he and his successors in interest paid rental to interveners for the use of this filling station, and the land adjoining the same, at the rate of one cent per gallon of gasoline sold. July, 1937, defendant entered into an agreement with interveners for the use of said filling station, but before doing so he investigated the situation on the ground, talked to plaintiff, and told her that he contemplated the renting of the station, and she at that time did not indicate that she claimed any interest therein. Subsequently she notified defendant that she was the owner of the sixty-foot strip and demanded payment of the rentals to her. Defendant refused to make further payments either to interveners or to plaintiff, but retained the rentals in his own account at the bank. The agreement between defendant and interveners included for the rental the use of the 125-foot tract, the filling station and equipment located on the sixty-foot strip, and the 250-foot tract and the improvements thereon, located south of the railroad right of way. After defendant had taken possession of these three tracts, plaintiff agreed to pay rental to him at the rate of four dollars per month for the use of the improvements on the 250-foot tract.

August 18, 1923, one G. A. Taff, agent, received treasurer's deed from the treasurer of Garfield county to the south half of the northeast quarter of section 25, township 6 south, range 95 west (which description included the sixty-foot strip and the 125-foot square tract), and other property, as a result of the 1914 tax sale for the taxes for the year 1913. This treasurer's

deed contains, inter alia, the following recitals:

"Know All Men By These Presents, That, whereas, the following described real property, viz:

* * *

"The south half of the northeast quarter (S½ N.E. ¼), section twenty-five (25), township six (6) south, range ninety-five (95) west of the sixth (6th) principal meridian; [and other lands],

* * *

situate in the county of Garfield and State of Colorado, was subject to taxation for the year A.D. 1913, and each of said tracts was separately assessed accordingly;

"And, Whereas, the taxes assessed upon said property for the year aforesaid remained due and unpaid at the date of sale hereinafter named;

"And, Whereas, the treasurer of the said county did, on the twenty-first day of December, A. D. 1914, by virtue of the authority vested in him by law, at the sale begun and publicly held on the twenty-first day of December, A. D. 1914, expose to public sale, separately at the office of the treasurer, in the county aforesaid, in substantial conformity with the requirements of the statute in such case made and provided, the real property above described for the payment of the taxes, interest and costs then due and remaining unpaid on said property;

"And, Whereas, at the sale so held as aforesaid by the treasurer, no bids were offered or made by any person or persons for the said property on any one or more of said tracts, and no person or persons having offered to pay said taxes, interest and costs upon the said property, or any one or more of said tracts for said year, and the treasurer having become satisfied that no sale of said property or any one or more of said tracts could be had, therefore the said property was, by the then

treasurer of the said county at separate sales [stricken off to the said county], and separate certificates of sale were duly issued therefor to the said county in accordance with the statute in such case made and provided;

"And, Whereas, the said Garfield county, acting by and through its county treasurer, and in conformity with the order of the board of county commissioners of said county, duly entered of record on the tenth day of January, A. D. 1922, the said day being one of the days of a regular session of the board of county commissioners of said county, did duly assign unto G. A. Taff, agent, the certificate of sale of said property, so issued, as aforesaid, to said county, and all its right, title and interest in and to said property, held by virtue of said sale;

"And, Whereas, the said G. A. Taff, agent, has paid all subsequent taxes on said property;

"And, Whereas, more than three years have elapsed since the date of the said sales and the said property has not been redeemed therefrom as provided by law;

"And, Whereas, the said property was assessed for said year at the sum of more than one hundred dollars;

"And, Whereas, all of the provisions of the statutes prescribing prequisites [prerequisites] to obtaining tax deeds have been fully complied with, and are now of record, and filed in the office of the county treasurer of said county;

"Now, Therefore, I Chas. H. King, treasurer of the county aforesaid, * * * have granted, bargained and sold, and by these presents do grant, bargain and sell the above and foregoing described real estate unto the said G. A. Taff, agent, his heirs and assigns, forever, subject to all the right of redemption by minors, insane persons or idiots, provided by law."

Subsequently, and by mesne conveyances, Jacob Eshe, husband of the plaintiff, acquired a purported

title to the property described in the treasurer's deed, although it is apparent that at the time of filing suit plaintiff had no title to the property, the purported title at that time being in Jacob Eshe. During the trial of the case, and after motion had been filed by defendants and interveners for judgment, plaintiff filed what is alleged to be a correction deed, whereby land conveyed by Jacob Eshe to plaintiff, and described as the south half of the northeast quarter of section 35, was claimed to be land known and described as the south half of the northeast quarter of section 25. Interveners and defendants made objection at the time to the admission of the correction deed in evidence, and in their specification of points set up these objections, but in our view of the case, as hereinafter expressed, we do not deem this matter of any importance.

After hearing, the trial judge rendered a written opinion, which appears in the record, in which he found that the two tracts in question, namely, the 125 and the 250-foot tracts, belong to interveners, but that the sixty-foot strip, which had been deeded to the county of Garfield for road purposes, belongs to plaintiff, and that therefore defendant should account to plaintiff for rentals at the rate of one cent per gallon on all gasoline sold during the time he had operated the filling station, which rentals amount to $800, of which the Socony-Vacuum Oil Company had deposited the sum of $64.05 into the registry of the court, leaving a net due of $735.95. The trial court then credited, as against this amount due to plaintiff, the sum of $188 on account of rentals due from her for the buildings on the 250-foot tract, leaving a balance of $547.95, and entered judgment; that the sum of $64.05 in the registry fund of the court be paid to plaintiff; that plaintiff have judgment against defendant for the further sum of $547.95 with interest thereon; that defendant account to plaintiff and pay over to her rentals computed at the rate

of one cent per gallon for all gasoline sold by defendant since the 31st day of March, 1942.

The only title which plaintiff claimed on the sixty-foot strip, and the filling station and equipment thereon, was that deraigned through the treasurer's deed, which subsequently had been attempted to be fortified by a suit to quiet title brought October 4, 1923, against the Grand River Irrigation and Development Company, and other defendants. The Munro Mercantile Company, predecessor in title to interveners, was not made a party, although it was the record owner and in possession of the 125-foot tract at that time, nor were the county commissioners of Garfield county made parties, although they were the holders of the record title to the sixty-foot strip. A judgment is ineffectual as to one not a party to an action. *Graybill v. Cornelios,* 79 Colo. 498, 246 Pac. 1029. Section 7410, Compiled Laws, 1921, which was in effect when the sale was had, provides: "The sale of lands upon which taxes remain delinquent shall commence on or before the second Monday in November of each year, * * * ."

In *Hamer v. Glenn Investment Co.,* 75 Colo. 423, 226 Pac. 299, we held that a sale of property for taxes is invalid, unless held at time required by statute; and a deed to property sold for taxes is void where it recited a date of sale which was unlawful under §7410, '21 C.L., no cause for postponement being shown; the rule is that compliance with every requirement must be affirmatively shown, and a deed showing a wrong date is void on its face.

We have held that a treasurer's deed void upon its face is no deed, and does not constitute color of title. *Dussart v. Abdo Mercantile Co.,* 57 Colo. 423, 140 Pac. 806. In this case we stated (p. 426):

"The deed upon its face shows that the property was sold to the county on the first day of the treasurer's sale. Under the repeated decisions of this court as well

as by the admission of parties, this deed was clearly void upon its face for such reason alone.

\* \* \*

(p. 428) "It may be stated as a general and well established rule of law, that in order to give color of title, the instrument of conveyance must at least be good in point of form, profess to convey the title, and be properly and duly executed.

\* \* \*

(p. 429) "The clearest definition of the term 'claim and color of title in good faith,' we have been able to find, is that given in *Irving v. Brownell,* 11 Ill. 403, where it is said:

" 'By the words "claim and color of title made in good faith," must, therefore, be understood such a title as, tested by itself, would appear to be good—not a paramount title, capable of resisting all others, but such an one as would authorize the recovery of the land when unattacked, as no better title was shown; that is, a *prima facia* title. Such a title, connected with seven years actual possession and payment of taxes, becomes invincible. \* \* \* .'

(p. 430) "One who takes a conveyance of a tax title can claim no benefit from it if he had actual knowledge of facts which render it invalid or if the records show on their face fatal defects or irregularities. 37 Cyc. 1485, Am. & Eng. Enc. Vol. 1, 868, and authorities cited. In *Bowmand v. Wetting,* 38 Ill. 416, the holder of a certificate of tax sale obtained a tax deed prior to the expiration of the two years required by the statute and the court said:

" 'The question is, can a party holding such certificate, when he accepts a deed to which he knows he is not entitled under the law, be considered as acquiring the color of title which such deed, if he was entitled to it, would give him, in good faith? We have no hesi-

tancy in answering this question in the negative. The deed was made and accepted in fraud of the law. The appellant knew, when he accepted this deed, that he was not entitled to it, and therefore, cannot use it as color of title made in good faith.' "

Regardless of the fact that interveners were the owners and in possession of the 125-foot tract, and the sixty-foot strip was the property of Garfield county, plaintiff claims title under a tax deed and an action to quiet title, to which the Munro Mercantile Company and the county commissioners were not parties. The deed and action purport to establish title to the south half of the northeast quarter of section 25, which includes the 125-foot tract clearly held by interveners, and the sixty-foot strip which appeared on the records as the property of Garfield county. No matter what the situation may be in regard to the ownership of the sixty-foot strip upon which the filling station and improvements are located, as between the interveners and Garfield county, it is clear that plaintiff has no valid claim of title thereto, for she can claim no "color of title" relying upon a tax deed which is void upon its face.

The judgment of the trial court, in so far as it adjudges interveners to be the owners of the 125-foot and the 250-foot tracts, is affirmed; its holding that plaintiff is the owner of the sixty-foot strip, is reversed, and the case is remanded with directions to modify the judgment on distribution of the rentals due from defendant in conformity with the views herein expressed. Defendant in error to pay the costs in this court.