## No. 16,693.

HAND ET AL. *v*. RHODES ET AL.
(245 P. [2d] 292)

Decided May 26, 1952.

Mr. FOSTER CLINE, for plaintiffs in error.

Mr. MACK WITTY, for defendants in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the court.

THE parties appear here in reverse order to that assumed by them in the trial court, where judgment was favorable to plaintiffs. In their complaint plaintiffs allege that they are the owners of Lot 8 of Block B, Town of Fairplay, commonly called the "Hand Hotel and Cafe." The object of their action was to procure an order restraining and preventing the defendants Hand and the Town of Fairplay, which was named a defendant in the trial court, but does not appear in this court, from blockading or interfering with free transit over a strip of land said to be 16.7 feet in width adjoining the property of plaintiffs. It is plaintiffs' contention that said strip of land is a public way, or alley, necessary to enable plaintiffs to gain access to the rear of their property; that prior to 1939 the strip of land here in controversy was designated upon the plat of the Town of Fairplay as an alley and that it was so used; that in 1939 a resurvey of the town was undertaken and a new plat filed in which said land was designated as Lot 7 of Block B; that it continued in that status until about the 24th day of February, 1951, when said alleged alleyway was blocked off so that ingress and egress thereto could not be had; and also that a sign was posted to "please stay out." They further allege and contend that a quitclaim deed executed in the name of the Town of Fairplay, signed by its mayor and attested by its clerk, bearing date of September 25, 1939, whereby the town purported to convey Lot 7 of Block B of said town to Norman J. Hand, is wholly void and invalid for the reason that the town had no authority to so convey, in that it had not followed any required statutory procedure to vacate said alley.

Defendants answered by general denial, together with

three affirmative defenses: First, that the complaint is insufficient to constitute a claim; second, that at a regular meeting of the Board of Trustees of the Town of Fairplay held November 7, 1938, the town regularly passed a resolution vacating said "parcel of land"; and third, that by deed dated September 25, 1939, pursuant to authorization by the Board of Trustees of the Town of Fairplay, the town conveyed said strip of land to Norman J. Hand for a valuable consideration, and that the officials acting on behalf of the town, as well as the said Hand, were acting in good faith and that said Hand has paid all taxes levied and assessed against said property from and since that date. They specifically deny that said strip of land furnishes the only means of access to the rear of the Hand Hotel or that there is any necessity for its use for that purpose.

A considerable portion of the testimony relates to two plats or maps of the Town of Fairplay which were marked Exhibits A and B, but which were not admitted in evidence by the trial judge, he apparently being under the impression that they were irrelevant and immaterial. This is truly unfortunate as it is extremely difficult for one examining the record, as here presented, to clearly visualize the location of these different properties as they exist upon the ground and we would have been materially aided had these maps, or photographic copies thereof, been permitted to become a part of the record.

As we understand from the record, as made, original title is by patent from the United States to South Park City in 1872, the name of the town later being changed to Fairplay. It would appear that there were but two plats of the townsite ever made; the first (exhibit A) in 1872, the year of the patent from the United States, and the second (exhibit B), the Galloway map, prepared in 1936 and filed of record in the office of the County Clerk of Park County in 1946. Nowhere in the record is shown any specific dedication of the streets and alleys of the

town to public use, and unless such may be inferred from the approval and adoption of the recorded plats, we must assume that there was no official acceptance to that end.

To the south and west from and to the back of the lands and property herein under discussion is the Platte River, which at this point pursues its course through a rather narrow defile between gravel and boulder bluffs on either side arising quite abruptly to an elevation of approximately forty feet above the river level. The town is located on the comparatively flat area from the top of the bluff to the northerly and easterly side of the river. In 1872 the county highway approached the town from the southwest, angling across the Platte River (apparently by cut-bank dugways on the bluffs on each side) and upon reaching the flat area on the town side divided, one fork turning right and he other left to Front street. At that time, and for many years thereafter, the entire area in and about that vicinity was vacant land. The right of way of said road was eighty feet in width. Such was the status of the area involved, as shown by and upon the plat of 1872, as appears from this record. The county highway mentioned continued in use for some period of years when it was abandoned because of change of location of its approach into the town, the date of its complete abandonment being somewhat indefinite but certainly not later than 1912.

Upon abandonment of the highway, what transpired with reference to the land within its eighty-foot right of way? Other than testimony to the effect that the strip of land here in controversy is within that ancient right of way, we are unadvised. Evidently, by some means or other, the remaining 63.3 feet thereof has passed quietly and without controversy into private hands. All thereof, together with lands immediately adjacent thereto, remained vacant and unused for either private or public purpose until 1931 when defendant Norman Hand erected the Hand Hotel. No witness testified that the town

authorities presumed to exercise dominion over the strip as a public way, or undertook to maintain it as such, or to do any work upon it in any respect whatever.

Witness Galloway, called as a witness on behalf of plaintiffs, in his testimony explained that prior to his survey, conveyances affecting property in that part of town, were by metes and bounds descriptions; that he had available to his use descriptions of various tracts claimed to be owned by different individuals and designated each thereof by separate lot number without regard to size; that when he came to this 16.7 foot parcel, though it appeared to be unclaimed by any individual, he designated it as Lot 7.

In 1938 defendant Norman Hand proposed to the town board that the town sell him this parcel of land. The board, by resolution, accepted his proposition and in 1939 conveyed the land to him by quitclaim deed, which he shortly thereafter placed of record. He has paid all taxes levied thereon since that date.

In February, 1948, plaintiffs purchased the Hand Hotel from defendants Hand and their co-owner. Their deed covered only Lot 8, the same being 46 feet in width, as shown by the plat. They proceeded to travel over and upon Lot 7, however; at their will and without interference until this controversy arose in February, 1951.

The Town of Fairplay is not here as a plaintiff demanding relief against obstruction by the Hands of one of its alleys or public ways. Quite contrary to the claims of plaintiffs, the position of the town, as expressed by its mayor when called as a witness on behalf of plaintiffs, is that he and the town board, in 1938 and 1939 when they sold Lot 7 to Hand, believed in good faith that, by virtue of the government patent, the town was the owner of said land and had full right to sell it.

On this record, which we have taken pains to set out in considerable detail, the trial court found and decreed that the parcel of land numbered Lot 7 in Block B "as it

is now shown on the plat of the town of Fairplay," was an alley or road, "and for a period of the past twenty years has been used by the public as a public alley"; that such alley was never properly vacated by the Town of Fairplay and that its deed thereto purporting to convey the same to defendant Hand in 1939 was and is void and of no force or effect, and "that the plot of ground remains a public alley." The temporary restraining order apparently theretofore granted was ordered to be made a permanent injunction.

Defendants Hand come here by writ of error and specify but two points upon which they rely for a reversal of the judgment of the trial court: (1) That upon the "vacation of the land" in controversy by the Town of Fairplay, title thereto reverted to the owners of the adjoining lots of which plaintiffs were the owners; (2) that even though the deed to defendant Norman Hand, above mentioned, may have been void at its inception, it constitutes color of title in him and that by his payment of taxes on said lands for more than seven years continuously, he is vested with title thereto.

Much of the controversy and contention in this case revolves around the issue of whether or not there was a legal and valid vacation of the "alley," when, in truth and in fact, from a consideration of all of the evidence, including the testimony of the witnesses called on behalf of plaintiffs, in the light most favorable to plaintiffs' contentions, it is clearly apparent that the strip of land in controversy never was a public alley, either by official or common-law dedication, acceptance, claim, use prescription, or otherwise. There is absolutely no theory of law under which it may be said that this narrow lot is a public alley of the Town of Fairplay. Dedication is the appropriation of land, by the owner thereof, to a public use. While no particular formality is required, the vital principle involved, and which must be shown, is intention to dedicate. "In the case at bar there is no claim that

the road in question is designated on any town map or plat as an existing way." *Ward v. Farwell,* 6 Colo. 66, 72. The latest approved town plat shows said parcel of land as a town lot, thus specifically negating any acceptance for a public use.

It is not denied that the county road at this point was abandoned at some date not later than 1912. In volume 25, American Jurisprudence, page 423, section 127, we find the statement that: "A highway which is lawfully vacated or *abandoned* ceases to be a highway and becomes private property, discharged from the public servitude. The public authority is not obligated any longer to keep it in repair, or liable for injuries resulting from its failure to do so. Thereafter *it can be re-established only by the same methods as are necessary to create a highway in the first instance.*" (Emphasis supplied.) It is not shown that the Town of Fairplay, at any date subsequent to 1912, took any official action to declare the controverted strip an alley. It did not regard or treat it as an alley, nor do any work whatsoever in the way of improving or maintaining it as such. There was no acceptance, express or implied. See, *City of Denver v. Denver & Santa Fe Railway Co.,* 17 Colo. 583, 585, 31 Pac. 338.

"It is necessary in order to constitute a public street or highway, at common law, that there be both a dedication and acceptance. It is also true that a dedication without an acceptance is merely an offer to dedicate, which may, under some circumstances, be withdrawn. It is equally true that until there is an acceptance, respecting a common law dedication, the public acquires no interest in the streets and assumes no duties with reference thereto. It would also seem to be the general rule, that in order to constitute an acceptance, it must be made by the proper authorities within a reasonable time, or the right to accept may be lost." *Board of County Commissioners v. Warneke,* 85 Colo. 388, 396, 276 Pac. 671.

In *Hunt v. Brewer,* 104 Colo. 375, 378, 91 P. (2d) 485, in approval of the Warneke decision, is the following very pertinent expression: "Plaintiff admits that there has been no statutory dedication, but says there is a continuing offer of common law dedication. This is not enough. An acceptance thereof is necessary." Under our view of this case, no alley was ever in existence. Therefore, the first specification is not in point.

■ Under the second specification it is claimed that Norman Hand is owner under color of title and payment of taxes for seven years. This is not an action to determine title, and the question of title is involved here only to the extent of determining the relative rights as between the parties. As we have pointed out, the record in this case is completely devoid of any evidence in support of plaintiffs' contention that the parcel of land in controversy is a public way or alley; hence, defendant's title becomes immaterial. *Board of County Commissioners v. Warneke, supra.* If it be considered essential, however, that we confine our decision to the specification of points, we have no hesitancy in saying that Norman J. Hand has a better title to Lot 7 than that shown from this record in any other party. Plaintiffs make no claim of title in themselves, merely contending that the land in controversy is a public alley. The town, as we view the case, by failure of acceptance of the strip as a public alley, derived no title in that manner. If, however, any record title rested in the town by reason of the original patent, it was conveyed to Hand. He has "color of title" and present possession. His deed was over seven years old at the commencement of this suit, and he had paid the taxes during that period. Chapter 40, sections 143, 144, '35 C.S.A. We confine citation to two cases: *De Foresta v. Gast,* 20 Colo. 307, 38 Pac. 244; *Munro v. Eshe,* 113 Colo. 19, 156 P. (2d) 700.

If it be said that we have gone beyond the specification of points to reach the determination we have an-

nounced in this case, this, under the circumstances, we felt it our duty to do.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded with direction to vacate its judgment and dismiss the action.