No. 14,849.

FEDERAL FARM MORTGAGE CORPORATION *v.* SCHMIDT.

(126 P. [2d] 1036)

Decided May 18, 1942.

Mr. M. M. BULKELEY, Mr. W. E. PEPPERELL, Mr. CONRAD L. BALL, Mr. J. P. FLINN, Mr. EDWARD H. JAMISON, for plaintiff in error.

No appearance for defendant in error.

Mr. GOLDING FAIRFIELD, Mr. I. L. QUIAT, Mr. PERCY S. MORRIS, amici curiae.

*En Banc.*

MR. JUSTICE BOCK delivered the opinion of the court.

WE here are concerned with a controversy culminating in an action brought under the Declaratory Judgments Act by the Federal Farm Mortgage Corporation, to determine the marketability of the title to a certain

tract of real estate. For convenience, we refer to the parties as they appeared in the trial court. Plaintiff sold the real estate to defendant under an agreement to deliver to him an abstract showing marketable title in plaintiff. The sole question presented is the effect of sections 146 to 151, inclusive, chapter 40, '35 C. S. A., upon the title in question, so as to render it marketable. It is admitted that without the benefit of these sections the title would not be marketable. There is no dispute over the facts. The trial court held the effect of said sections to be adverse to the contentions of counsel for plaintiff and entered judgment in favor of defendant. Plaintiff is here seeking reversal on writ of error. Defendant makes no appearance. Amici curiae, favoring the marketability of the title, have filed a brief in support of that position. They claim no personal interest in the result of the litigation, but assert that an affirmance of the judgment would render unmarketable titles to thousands of parcels of real estate in this state which have been passed as marketable in reliance upon said sections.

██ ██ The rule with reference to marketable titles is stated in Thompson on Real Property, vol. 5, page 407, section 4296, as follows: "A purchaser of land, before he is required to pay the purchase price, is entitled, unless stipulated to the contrary, to receive a marketable title, a title that is fairly deducible of record and not depending on matters resting in parol. The term 'marketable title,' when applied to real estate, means a title free from reasonable doubt. * * * It means a title that is reasonably free from such doubts as will affect the market value of the estate; one which a reasonably prudent person with knowledge of all the facts and their legal bearing would be willing to accept." See, also, 66 C. J., p. 862, §534.

What does the abstract show as to plaintiff's title? It discloses that in June, 1888, one George Collins was the owner and holder of the record fee simple title to

the property. On the 7th day of that month Collins and his wife Mattie E. Collins, made, executed and delivered to one Elizabeth P. Avery a certain real estate mortgage conveying the property to the mortgagee as security for the payment of an indebtedness described in the mortgage. This mortgage was properly recorded in the office of the county clerk and recorder. Thereafter, Collins and his wife made, executed and delivered to one George E. Clark a second real estate mortgage covering the same property, which mortgage also was recorded in the office of the county clerk and recorder. After the execution of both of these mortgages and on the 16th day of June, 1888, Collins and his wife sold the property and made, executed and delivered a warranty deed transferring it to one Charles F. Frank, which warranty deed was duly recorded in the proper office. Thereafter, and in July, 1893, Elizabeth P. Avery, the mortgagee in the first real estate mortgage, instituted an action in the county court of Yuma County, Colorado, to foreclose her mortgage, and November 3, 1893, a judgment and decree was duly entered in said action in her favor foreclosing her mortgage and directing sale of the property by the sheriff of Yuma county. The sale was held December 11, 1893, and the property bid in by Avery, who received a certificate of purchase and caused the same to be recorded on the county records January 9, 1894. After the period of redemption had expired, and on September 27, 1894, the sheriff of Yuma county made, executed and delivered to Elizabeth P. Avery a sheriff's deed to the property, which was placed on record October 1, 1894, and since that date has so remained of record.

In the foreclosure action by Avery, personal service of summons was made upon defendant Clark, who was the holder of the second real estate mortgage on the property. Constructive service of summons on defendants George Collins and Mattie E. Collins, the mortgagors, and Charles F. Frank the record owner of the property at the time the foreclosure action was in-

stituted, was attempted by Avery, but the affidavit for service by publication was fatally defective in that it did not state the post-office addresses of the parties defendant sought to be served, nor did it state that the addresses of these parties were unknown to the affiant; there was, therefore, no valid service upon the mortgagor and record owner of the property at the time the action was brought, and this defect was fatal to the validity of the decree entered in the foreclosure suit.

The title to the property since the execution and delivery of the sheriff's deed is free from objection and runs in a regular unbroken chain from Avery, the grantee in the sheriff's deed, to the plaintiff. All of the respective conveyances were made by warranty deeds, regular in form, properly executed and acknowledged, and properly recorded in the office of the county clerk and recorder of Yuma county, Colorado.

■ Defendant, claiming that the title was not marketable because of the failure of service upon the record owner in the foreclosure action in 1893, refused to accept the deed because of this alleged defect in title. Counsel for plaintiff contend that, irrespective of failure of the service mentioned, the title is marketable by reason of sections 146 to 151, supra. In the solution of this controversy we primarily are concerned with section 146, which reads as follows: "No action shall be commenced or maintained against a person in possession of real property, to question or attack the validity of, or to set aside, upon any ground or for any reason whatsoever, any final decree or final order of any court of record of this state, or any instrument of conveyance, deed, certificate of sale or release executed by any private trustee, successor in trust, public trustee, sheriff, marshal, public officer or officer or appointee of a court, when such document shall be the source of or in aid of or in explanation of the title or chain of title, or right of the party in possession, or any of his predecessors or grantors, in so far as the same may affect the title or

explain any matter connected with the title in reference to said real property; provided, such document shall have beeen recorded and have remained of record in the office of the recorder of the county where said real property is situated for a period of seven years. Any and all defects, irregularities, want of service, defective service, lack of jurisdiction or other grounds of invalidity, nullity or causes or reasons whereby or wherefore any such document might be set aside or rendered inoperative must be raised in a suit commenced within said seven-year period and not thereafter; provided, however, that this section shall not apply to any of the following cases: (a) Forged documents. (b) During the pendency of an action commenced prior to the expiration of said seven-year period, to set aside, modify or annul, or otherwise affect such document, and notice of such action has been filed as provided by law. (c) When such document has been by proper order or decree of competent court avoided, annulled or rendered inoperative. (d) Where the party who brings the action to question, attack or set aside the validity of such document, or his predecessor, shall have been deprived of possession within two years of the commencement of said action."

Section 147, supra, extends the defense of legal disability to such persons for two years after the right of action first accrued, and who, at the time of the expiration of the seven-year limitation under section 146, supra, still are under such disability. Section 148 provides that the limitations contained in chapter 150, page 585, Session Laws of 1927, may be asserted affirmatively or by way of defense. Section 149 relates to the application of the limitations to causes of action which have accrued prior to the time these sections became effective, as well as to all causes of action accruing thereafter, which is a period of two years. Section 150 deals with the effect of the 1927 act on former periods of limitation and fixes the period within which certain actions

may be commenced as two years from the date of the passage of the act. Section 151 declares the public policy and purpose of the act to be such "that the record title of the party in possession shall be sustained and not be defeated by technical or strict construction." Most of the provisions of these sections were enacted to satisfy constitutional requirements. In our opinion in the case of *Birkby v. Wilson*, 92 Colo. 281, 19 P. (2d) 490, after quoting from section 151, supra, we said (p. 285): "The purpose of this act was to make real estate titles 'more safe, secure and marketable.' To this end a liberal construction is required by section 44 [§151]. In interpreting the act, it is necessary to construe its various sections harmoniously." With this purpose in mind, which undoubtedly expresses the legislative intent, we proceed to a consideration of the judgment before us.

█ The trial court seemed to be of the opinion that the sections here involved could not be asserted affirmatively. We do not see where this is material in the case at bar. Whether or not the limitations contained in these sections can be pleaded either way, the effect is to bar the bringing of an action to attack a judgment or decree or deed falling within their provisions. It is true that, as a general rule of law, statutes of limitation are held to be available only as a matter of defense or bar to the bringing of an action; but where, as here, a statute (§148, supra) expressly provides that the limitations therein contained "may be asserted affirmatively or by way of defense," the general rule has no application. The general assembly had the power to pass such legislation, and having in mind the intent and purpose of the entire 1927 act, permission to assert affirmatively the limitations contained therein include such as are found in the sections here involved.

█ █ The remaining contention is the primary one involved, viz., marketability of the title. In holding it to be unmarketable, the trial court relied solely on ex-

ception (d) of section 146, which reads as follows: "Where the party who brings the action to question, attack or set aside the validity of such document, or his predecessor, shall have been deprived of possession within two years of the commencement of said action." The court, in construing section 146, held it to mean, "that when a deed has been of record for seven years, purporting to convey the title, that the person who claims under the said deed, if in possession for two years, may plead the statute of limitations when he is attacked." Since such possession does not appear in the abstract as a fact, the title was held to be unmarketable. There is no requirement that a person who for seven years claims under a defective deed of record, must be in possession for two years before he can plead the statute of limitations. It may be pleaded by any person in possession under a defective deed, which is the source of his title, and which had been recorded for more than seven years at the time of the commencement of the action. Section 146 sets no period of time of possession for one who seeks to be the beneficiary thereof. What he is required to do is to establish that the defective instrument under which he claims title has been of record for nine years—seven years under section 146, plus two years under section 147. These facts may be shown by the abstract of title. He also has to prove that he is in actual possession of the real estate. In the record before us this is stipulated and admitted by the parties. The fact, however, is not shown by the abstract of title. Possession of real estate is not shown by an abstract in any case, no matter how perfect the record title is. It is not marketable unless the record owner, or someone claiming under him, is in actual possession. Open, notorious and exclusive possession of real estate under a claim of ownership, even though nothing appears of record, constitutes notice of the possessor's claim, and such notice places interested parties upon inquiry. *Yates v. Hurd,* 8 Colo. 343, 344, 8 Pac. 575, 576; *Jerome v. Car-*

*bonate National Bank,* 22 Colo. 37, 42, 43, 43 Pac. 215, 217; *Davis v. Pursel,* 55 Colo. 287, 299, 300, 134 Pac. 107, 111, 112; Patton on Titles, p. 1068.

■ The title here involved must be held to be marketable. Under the pleadings and stipulated facts, possession of plaintiff is admitted. There is no suggestion in the pleadings that plaintiff, or its predecessor, was not in actual possession for two years prior to delivery of the abstract of title. Subdivision (d), supra, is one of four exceptions set out in section 146. The first part of the section is complete and independent in and of itself, without the latter language containing the proviso which sets forth the exceptions. The first part of the section states the general rule; the latter part states the exceptions separately. In our opinion, it was necessary for defendant, if he wished to take advantage of subdivision (d), to assert this exception in his answer. 49 C. J., pp. 153, 154, §169. Defendant having failed to do this, there was no issue, such as was sought to be made under subdivision (d), before the court. As an illustration, one of the exceptions in section 146 is "Forged documents." This is not a matter which would appear as a fact in the abstract of title. It could not successfully be contended that, to show a marketable title, plaintiff would have to prove affirmatively that all instruments in his chain of title are genuine. The presumption is that they are genuine. It was incumbent upon defendant to assert any exceptions under section 146, and his failure so to do eliminated their consideration in the determination of a marketable title.

The judgment is reversed and the case remanded, with directions to enter judgment in favor of plaintiff sustaining the marketability of its title.

MR. CHIEF JUSTICE YOUNG and MR. JUSTICE HILLIARD not participating.