Warren A. KNIGHT, Plaintiff-Appellee,

v.

The DEVONSHIRE COMPANY, a Colorado corporation, Defendant-Appellant.

No. 84CA0463.

Colorado Court of Appeals, Div. II.

Sept. 4, 1986.

Rehearing Denied Nov. 6, 1986.

Certiorari Denied (Knight) May 11, 1986.

Karsh & Fulton, P.C., Alan E. Karsh, Denver, for plaintiff-appellee.

Montgomery Little Young Campbell & McGrew, P.C., William H. ReMine, III, Englewood, for defendant-appellant.

SMITH, Judge.

In this action plaintiff, Warren A. Knight, sued defendant, The Devonshire Company, to recover an earnest money deposit given by him pursuant to a contract to purchase certain real property. At the conclusion of a trial to the court, plaintiff was awarded judgment in the amount of the deposit plus interest from the date he repudiated the contract. Defendant appeals, and we reverse.

The pertinent facts are essentially undisputed and may be summarized as follows. Plaintiff and Carl Swanson entered into a specific performance contract whereby plaintiff agreed to purchase certain real property located in Arapahoe County, Colorado. The purchase price was to be $450,-000, and an earnest money deposit in the amount of $40,000 was given by plaintiff to the defendant as the broker for Swanson, the seller.

Pursuant to the contract, Devonshire obtained a title insurance commitment and furnished the same to plaintiff's counsel. That commitment included, as an exception to the title insurance, a mineral reservation by the United States which was contained in the original patent recorded in June of 1883. As part of the language of grant in that patent the following appears:

"Yet, excluding and excepting from the transfer by these presents All Mineral Lands should any such be found in the tracts aforesaid but this exclusion and exception according to the terms of the Statute shall not be construed to include coal and iron land."

Upon receipt of the commitment, plaintiff advised Devonshire that he considered the reservation such a defect as to render title unmerchantable and, pursuant to the contract, demanded that the defect be cured. Counsel for seller promptly advised plaintiff that the defect could not be cured but offered title insurance protection to cover the exclusion.

The evidence at trial disclosed, however, that such protection would not have been directed to the validity of the reservation but would only protect the new owner against surface damage resulting from the severed mineral rights. Plaintiff declined to accept this alternative and elected to declare the contract terminated. He demanded return of his deposit. Based on his position that the mineral reservation was void, or that in any event it would be insured against, the seller advised that he stood ready to close and refused plaintiff's demand. The transaction did not close and this litigation ensued.

The issue presented to us on this appeal is solely one of law. Does the reservation language of the 1883 patent constitute such a defect as to render title to the property unmerchantable? We hold that it does not, and therefore reverse the judgment.

Valid reservations or exceptions of mineral rights presumptively constitute a sufficient defect in title, or encumbrance, to render a seller's title unmarketable. *O'Hara Group Denver, Ltd. v. Marcor Housing Systems, Inc.*, 197 Colo. 530, 595 P.2d 679 (1979); *Eychaner v. Springer*, 34 Colo.App. 412, 527 P.2d 903 (1974). The ultimate test, however, is whether the specific title in question is merchantable.

█ A merchantable or marketable title in real estate is a title free from reasonable doubt. It means a title that is "reasonably free from such doubts as will affect the market value of the estate; one which a reasonably prudent person with knowledge of all the facts and their legal bearing would be willing to accept." *Federal Farm Mortgage Corp. v. Schmidt,* 109 Colo. 467, 126 P.2d 1036 (1942).

To be marketable, a title must be such as to make it reasonably certain that it will not be called into question in the future so as to subject the purchaser to the hazard of litigation. *Morley v. Gieseker,* 142 Colo. 490, 351 P.2d 392 (1960); *Michaelson v. Tieman,* 36 Colo.App. 435, 541 P.2d 91 (1975). Where no reasonably foreseeable challenge to title or to the right of possession and quiet enjoyment of the property can be demonstrated, title will be determined to be marketable. *Edwards v. St. Paul Title Insurance Co.,* 39 Colo.App. 235, 563 P.2d 979 (1977).

We view the decision in *Burke v. Southern Pacific R.R.,* 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527 (1914) as being dispositive of the question of merchantability of the specific title in question here. That case, just as this one, involved a patent granting large tracts to the railroad. It contained a reservation, the language of which is in all material respects identical to the one here. The same reservation appeared in all patents issued to railroads between 1866 and 1904.

█ In *Burke,* the Supreme Court, after examining the public land laws of the United States, held that the issuance of such a patent constituted a conclusive determination by the Land Department that the lands granted were non-mineral in character. Those minerals which in fact did exist passed to the railroad, and title would not be defeated or diminished by a subsequent discovery of minerals. We interpret the *Burke* decision as holding that the "mineral lands" reservation contained in these patents, and specifically the one at issue here, is of no legal effect and, thus, void.

Under *Burke,* the only basis upon which the railroad's title to minerals could be attacked would be if the patent had been procured by fraud, and then only the government would have the right to bring an action to annul the patent. To commence such an action, however, the government would have had to file its petition within six years of the date the patent was issued.

In our view, the *Burke* court intended to dispel uncertainty as to the merchantability of title under patents containing the mineral lands exception. After reviewing and reaffirming prior decisions which had come to the same conclusions, the *Burke* court said:

"Not only has the Land Department accepted them (the decisions) as determinative of the excepting cause now before us, but innumerable titles within the limits of the western railroad grants have been acquired with a like understanding and are now held in the justifiable belief that they are impregnable."

The patent in the instant case was issued in 1883 and granted described lands to the Union Pacific Railroad. This patent was issued pursuant to the congressional enactment of July 1, 1862, as amended in 1864, 1866, and 1869. Although the *Burke* case dealt with a patent issued under the enactment of July 27, 1866, we conclude its holding applies to this patent as well. The Supreme Court indicated the broad scope of its holding when it said:

"The exclusion of mineral lands is not confined to railroad land grants, but appears in the homestead, desert-land, timber and stone, and other public land laws, and the settled course of decision in respect to all of them has been that the character of the land is a question for the Land Department ... and that when a patent issues it is to be taken, upon collateral attack, as affording conclusive evidence of the non-mineral character of the land...."

More recently, in *United States v. Union Pacific R.R.,* 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957), Justice Douglas noted the applicability of the *Burke* case to patents issued under the enactment of July 1, 1862. He cited specifically to *Burke* in

distinguishing the validity of mineral reservations in grants of "rights-of-way" from the invalidity of mineral land exceptions in patents.

 In light of the dispositive nature of the *Burke* holding, we perceive no foreseeable, or even remote, possibility of litigation here stemming from the patent's purported reservation of mineral rights. Thus, we hold that the trial court erred in concluding that seller's title was unmarketable because of the possibility of litigation concerning the reserved mineral rights. Consequently, plaintiff's election not to proceed to closing based on this "defect" was a default under the terms of the contract, and he was not entitled to a return of his earnest money deposit.

The judgment is reversed and the cause is remanded with directions to dismiss the complaint.

STERNBERG and BABCOCK, JJ., concur.