Bernie L. GALLEGOS and Sandra Gallegos, Plaintiffs–Appellants,

v.

Lawrence C. PHIPPS, III, Douglas Mac-Connell, Agnes A. MacConnell, as individuals and directors of Red Ram Management, Inc., a Colorado corporation, and Red Ram Management, Inc., a Colorado corporation, Defendants–Appellees.

No. 88SA141.

Supreme Court of Colorado,
En Banc.

Sept. 18, 1989.

Rehearing Denied Oct. 16, 1989.

Jeffrey R. Edelman and Joseph R. Haughain, Denver, for plaintiffs-appellants.

Wood, Ris & Hames, P.C., Bruce F. Fest and Christian N. Lind, Denver, for defendant-appellee Lawrence C. Phipps, III.

Yu, Stromberg & Huotari, P.C., Frederick Y. Yu, Denver, for defendants-appellees Douglas MacConnell, Agnes MacConnell and Red Ram Management, Inc.

Justice ERICKSON delivered the Opinion of the Court.

The appellants, Bernie Gallegos and Sandra Gallegos, appeal from a jury verdict finding the defendants not liable for injuries suffered by Bernie Gallegos when he fell down a staircase located on defendants' property. Specifically, the appellants claim, inter alia, that section 13–21–115, 6A C.R.S. (1987) (actions against landowners), violates the constitutional guarantee to equal protection and is therefore unconstitutional. We agree and accordingly reverse.[1]

I.

On December 28, 1986, appellant Bernie L. Gallegos fell down a flight of stairs at a Georgetown, Colorado, bar and restaurant known as the Ram and suffered substantial injuries. The Ram, built in the 1890's and located in an area which has been historically preserved on the National Register of Historic Places, was operated by co-defendant Red Ram Management, Inc. on premises leased from co-defendants Mickey E. Feuts, Lawrence C. Phipps, III, and Jeanne Neal, d/b/a Red Ram Venture.

Gallegos and his wife brought suit against Red Ram Management, Inc. and its directors, Douglas MacConnell, Kathleen Brauge, and Agnes MacConnell, as well as Red Ram Venture.[2] The Gallegoses asserted three claims. The first claim, denoted "premises liability," was grounded in section 13–21–115, 6A C.R.S. (1987), and al-leged that the stairwell which Gallegos fell down was dangerous, that the appellees knew it was dangerous but failed to either warn or protect its patrons from the danger, and that the danger created by the stairwell was not ordinarily present on property of that type. The second claim was brought by Gallegos' wife for loss of consortium. The final claim alleged that agents of the appellees, specifically Ram bartenders, willfully and wantonly served intoxicants to the visibly intoxicated Gallegos in violation of Colorado law. The appellants claimed that as a result of these willful and wanton acts, Gallegos suffered serious injury. The appellees defended on the theory that Gallegos' fall and injuries were caused by his self-induced intoxication and not by any dangerous conditions on the premises. The appellees also asserted that the stairwell at the Ram was typical of stairwells found in other late nineteenth-century Georgetown buildings and hence did not constitute a danger not ordinarily present on similar property.

The appellees filed a motion for summary judgment and the trial court dismissed Gallegos' claim for negligent service of an intoxicant. The remaining two claims proceeded to trial. During trial, the appellees presented testimony that Gallegos was in a "drunken stupor" and, before falling, began descending the stairs in an awkward manner by placing his back against the wall and crossing one foot over the other. Expert testimony was presented to establish that the stairs at the Ram were typical of those found in similarly aged Georgetown buildings and that the Ram stairs were safely constructed and maintained.

The appellants countered by alleging that the appellees' service of excess alcohol, coupled with the knowledge that the stairway was dangerous and the failure to warn of that danger, established that appellees deliberately failed to exercise rea-

1. This appeal was filed directly with this court pursuant to section 13–4–102, 6A C.R.S. (1987) (constitutionality of a statute in question).

2. The only co-defendants listed as appellees in this proceeding are Lawrence C. Phipps, III, Douglas MacConnell, and Agnes A. MacConnell, individually and as Directors of Red Ram Management, Inc., a Colorado corporation, and Red Ram Management, Inc., a Colorado corporation.

sonable care regarding a known danger. Alternatively, appellants argued that section 13–21–115, the premises liability statute, denied Gallegos equal protection of the laws inasmuch as under the statute a landowner was required to warn licensees, but not invitees such as Gallegos, of dangers on the property.

At the conclusion of the testimony, the trial court gave the jury an instruction drawn from section 13–21–115(3)(c), which provided, in part, that:

> In order for the Plaintiff, Bernie Gallegos, to recover from the Defendants on his claim of premises liability, you must find all of the following have been proved:
>
> 1. The Plaintiff incurred injuries;
>
> 2. The Defendants deliberately failed to exercise reasonable care to protect against a danger on the premises;
>
> 3. The danger was one not ordinarily present on the kind of premises involved;
>
> 4. The Defendants had actual knowledge of the danger; and

> 5. The Defendants' deliberate failure to exercise reasonable care was a cause of the Plaintiff's injuries.

The jury returned a verdict in favor of the appellees on both of the appellants' claims. In response to special interrogatories submitted with the instructions, the jury specifically found that Gallegos was negligent and had suffered his injuries because of his own negligence. The jury also found that Gallegos' injuries were not caused by any dangerous condition at the Ram and that the Red Ram Management, Inc. did not deliberately fail to exercise reasonable care to protect against dangers which are not ordinarily present on property of the kind involved.[3] Accordingly, the trial court entered a judgment on the verdict in favor of the appellees and the case was dismissed.

## II.

Bernie and Sandra Gallegos now appeal from the trial court's decision, raising fourteen separate claims of error. We address the first constitutional issue only: Whether section 13–21–115 denies appellants equal protection of the laws.[4]

---

**3.** The jury's findings, contained in "Special Verdict Form A," are reproduced here.

You are instructed to answer the following questions:

1. Did the Plaintiff Bernie Gallegos incur injuries?
   X Yes ___ No

2. Did the Plaintiff, Bernie L. Gallegos, receive injuries by reason of a dangerous condition on the property known as The Ram?
   ___ Yes  X No

3. Did the Defendants Red Ram Management, Inc., Douglas MacConnell or Ann MacConnell deliberately fail to exercise reasonable care to protect against dangers which are not ordinarily present on property of the kind involved?
   ___ Yes  X No

4. If the answer to interrogatory number 3 is yes, did Defendants Red Ram Management, Inc., Douglas MacConnell or Ann MacConnell actually know about dangers which caused the Plaintiff's injuries?
   ___ Yes ___ No

5. Did Defendant Lawrence C. Phipps deliberately fail to exercise reasonable care to protect against dangers which are not ordinarily present on property of the kind involved?
   ___ Yes  X No

6. If the answer to interrogatory number 7 is yes, did Defendant Phipps actually know of such dangers which caused the Plaintiff's injuries?
   ___ Yes ___ No

7. Was Plaintiff Bernie Gallegos negligent?
   X Yes ___ No

8. Did Plaintiff Bernie Gallegos receive his injuries as a result of his negligence?
   X Yes ___ No

We, the jury, find for the Defendants and award no damages to the Plaintiffs, Bernie Gallegos and Sandra Gallegos.

**4.** We do not address the constitutional challenge to section 12–47–128.5, 5 C.R.S. (1988 Supp.) because the issue was not raised at the trial level. *See City of Aurora v. Aurora Firefighters' Protective Ass'n,* 193 Colo. 437, 566 P.2d 1356 (1977). Appellants' complaint originally asserted one claim based solely upon the appellees' alleged willful and wanton service of alcohol to the visibly intoxicated Gallegos. Admittedly, this claim directly implicated section 12–47–128.5. However, in response to appellees' motion for summary judgment, the appellants conceded that their claim for unlawful service of alcohol was barred by section 12–47–128.5. No argument was made that the statute was unconstitutional. The trial court, based upon the statute's provision that "no civil action may be brought ... by the person to whom the alcoholic beverage was sold or served or by his estate,

Section 13–21–115, entitled "Actions against landowners," governs the liability of landowners [5] and provides, in part, that:

(2) In any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable only as provided in subsection (3) of this section. This subsection (2) shall not be construed to abrogate the doctrine of attractive nuisance as applied to persons under fourteen years of age. A person who is at least fourteen years of age but is less than eighteen years of age shall be presumed competent for purposes of the application of this section.

(3)(a) If the plaintiff entered or remained upon the landowner's real property without a privilege to do so, which privilege is created by the consent of the landowner, the plaintiff may recover only for damages willfully or deliberately caused by the landowner.

(b) If the plaintiff entered or remained upon such property with the consent of the landowner, but the entry was for the plaintiff's own purposes and not the purposes of the landowner, the plaintiff may recover only for damages caused by the landowner's deliberate failure to exercise reasonable care in the conduct of the landowner's active operations upon the property or by the landowner's failure to warn of dangers which are not ordinarily present on property of the type involved and of which the landowner actually knew.

(c) If the landowner has expressly or impliedly invited the plaintiff onto the real property for the purposes of the landowner, the plaintiff may recover for damages caused by the landowner's deliberate failure to exercise reasonable care to protect against dangers which are not ordinarily present on property of the type involved and of which he actually knew.

(4) In any action to which this section applies, the judge shall determine whether paragraph (a), (b), or (c) of subsection (3) of this section is applicable. If two or more landowners are parties defendant to the action, the judge shall determine the application of this section to each such landowner. The issues of liability and damages in any such action shall be determined by the jury or, if there is no jury, by the judge.

## III.

### Equal Protection

The fourteenth amendment to the United States Constitution provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection

legal guardian, or dependent," section 12–47–128.5(3)(b), entered an order dismissing the claim. The appellants made no motion for reconsideration alleging that the statute was unconstitutional, and at no time during the course of the trial proceedings did the trial court even address the statute's constitutionality.

At trial, the appellants did raise the allegation that the appellees had unlawfully served him alcohol. This allegation was not, however, made in conjunction with a claim that appellants should recover for the unlawful service of alcohol in spite of the prohibition contained in section 12–47–128.5. Rather, the appellants argued that the service of alcohol, coupled with the appellees' alleged knowledge that the stairway was dangerous, constituted "deliberate failure to exercise reasonable care regarding a danger which he actually knew of" and thus entitled appellants to recover under 13–21–115(3)(c). In short, the appellants argued that the alleged unlawful service of alcohol entitled them to

damages under section 13–21–115, not section 12–47–128.5.

Consequently, the appellants challenge the constitutionality of section 12–47–128.5 for the first time on this appeal. Because an issue not raised at trial will not be heard for the first time on appeal, *see City of Aurora v. Aurora Firefighters' Protective Ass'n*, 193 Colo. 437, 566 P.2d 1356; *see also, Matthews v. Tri–County Water Conservancy Dist.*, 200 Colo. 202, 613 P.2d 889 (1980); *City and County of Denver v. Miller*, 151 Colo. 444, 379 P.2d 169 (1963), we decline to address the constitutionality of section 12–47–128.5 in this case.

5. Landowners are broadly defined in section 13–21–115(1), 6A C.R.S. (1987), to include "an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property."

of the laws." U.S. Const. amend. XIV, § 1. The right to equal protection of the laws is supported by the Due Process Clause of article II, section 25 of the Colorado Constitution, *see, e.g., Heninger v. Charnes,* 200 Colo. 194, 197, 613 P.2d 884, 886 (1980), and "guarantees that all parties who are similarly situated receive like treatment by the law." *J.T. v. O'Rourke,* 651 P.2d 407, 413 (Colo.1982). Statutes challenged as violative of equal protection requirements are presumed to be constitutional and the challenging party bears the burden of proving unconstitutionality beyond a reasonable doubt. *High Gear & Toke Shop v. Beacom,* 689 P.2d 624, 630 (Colo.1984). Because section 13–21–115 does not infringe upon a fundamental right, a suspect class, or a classification triggering an intermediate standard of review, the statute need only have some rational basis in fact and bear a rational relationship to a legitimate governmental interest to be valid. *See Board of County Comm'rs v. Flickinger,* 687 P.2d 975, 982 (Colo.1984); *Austin v. Litvak,* 682 P.2d 41, 49–50 (Colo.1984); *Dawson by & through McKelvey v. Public Employees' Retirement Ass'n,* 664 P.2d 702, 708 (Colo.1983); *see also Lindsey v. Normet,* 405 U.S. 56, 70, 92 S.Ct. 862, 872, 31 L.Ed.2d 36 (1972).

Appellants' equal protection argument can be summarized as follows: first, the statutory scheme is arbitrary and unreasonable, and bears no rational relationship to a legitimate state objective, because it accords less protection to persons traditionally described as "invitees" than it does to "licensees." Second, persons injured while on landowners' property are treated differently than other tort victims because those injured by landowners must prove deliberateness on the part of the landowner, while other tort victims, such as those injured by doctors or lawyers, need only prove negligence to recover. The appellants argue that the statute causes similarly situated parties, i.e., all victims of tortious acts, to be treated dissimilarly. The appellants then state that "[w]hile there may be a legitimate state objective in curtailing liability for purposes of, for example, lowering insurance premiums, [appellants] submit that singling out landowners for this special treatment is arbitrary." The claim is that the classifications created by section 13–21–115 bear no rational relationship to the legislature's legitimate interest in enacting the statute. In order to properly analyze this claim, we must begin by ascertaining the governmental interest intended to be promoted by passage of section 13–21–115 and then determine whether the statute promotes that interest.

Until 1971, the law in Colorado governing landowner's liability followed the common law's emphasis on whether the injured party was an invitee, licensee, or trespasser. *See Mile High Fence Co. v. Radovich,* 175 Colo. 537, 541, 489 P.2d 308, 311 (1971); *Husser v. School Dist. No. 11,* 159 Colo. 590, 593, 413 P.2d 906, 908 (1966). Under the common law, the landowner's liability depended exclusively upon the injured party's status. For example, a landowner had no duty to make or keep his premises safe for a trespasser. *Staley v. Security Athletic Ass'n,* 152 Colo. 19, 21, 380 P.2d 53, 54 (1963). If, however, the person was a licensee, the owner had a duty not to willfully or wantonly injure the person. *Gotch v. K & B Packing & Provision Co.,* 93 Colo. 276, 278, 25 P.2d 719, 720 (1933), *overruled, Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971). An even higher standard was owed if the person was an invitee; where an invitee was upon the owner's land, the owner had a duty to have the land in a reasonably safe condition and to warn of concealed defects that might have been discovered in the exercise of reasonable care. *Id.* at 278, 25 P.2d at 720.

In 1971, Colorado's common-law scheme governing landowner's liability was abolished by *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308. In *Mile High Fence,* the court held that the classification of one who is upon the property of another as invitee, licensee, or trespasser was no longer dispositive of the landowner's liability or the degree of care owed by the landowner. 175 Colo. at 548, 489 P.2d at 314. Rather, the relevant inquiry was whether the landowner, in the management of the

property, acted as a reasonable person in view of the probability or foreseeability of injuries to others. *Id.* A person's status as an invitee, licensee, or trespasser might have some bearing on the issue of liability, but it was only one factor among many to be considered in making the determination. 175 Colo. at 548, 489 P.2d at 314–15.

*Mile High Fence* remained in effect until May 16, 1986, when the General Assembly enacted section 13–21–115, 6A C.R.S. (1987), for the explicit purpose of resurrecting the common-law classification scheme laid to rest by *Mile High Fence.*[6] Under the statute, categories analogous to trespasser, licensee, and invitee were established in subsections (a), (b), and (c) of section 13–21–115. According to the legislators who sponsored House Bill 1205, which later became section 13–21–115, the common-law categories were reestablished because the reasonable person standard created by *Mile High Fence* led to unpredictable and inequitable results.[7] Of particular concern to legislators was the perception that under *Mile High Fence*, the responsibility for a trespasser's injuries was unfairly shifted from the trespasser to the landowner. Section 13–21–115 was, as one legislator put it, designed so that "responsibility falls upon the trespasser."[8]

█ In our view, the General Assembly's purpose in enacting section 13–21–115 addresses a legitimate governmental interest. It is unquestionably within the legislature's purview to enact legislation which modifies or abrogates decisions of this court so long as the legislation is constitutional. *See Pigford v. People*, 197 Colo. 358, 360, 593 P.2d 354, 356 (1979); *McMillin v. State*, 158 Colo. 183, 187–88, 405 P.2d 672, 674 (1965). Here, the General Assembly has determined that it should re-link a landowner's duty and an injured party's ability to recover damages with the party's status as an invitee, licensee, or trespasser. We view this as a statement by the legislature that a landowner's liability should once again depend upon the landowner's knowledge of the other person's presence and the reason for the presence on the property. Enacting this type of legislation was intended to promote responsibility among both landowners and those upon the land, and as such, constitutes a legitimate state interest.[9]

█ The next inquiry is whether this legitimate state interest is furthered by section 13–21–115. As we noted earlier, the statute in this case need only bear a rational relationship to the interest to pass constitutional muster. In our view, section 13–21–115 fails to pass the rational relationship standard.

In construing a statute, we must ascertain and give effect to the intent of the General Assembly. *Schubert v. People*, 698 P.2d 788, 793 (Colo.1985). In the case before us it is unquestionable that among the purposes of enacting section 13–21–115 was, as one legislator stated, the desire to "reinstate those classifications struck down

---

6. Passages from legislative committee hearings illustrate the extent to which the legislature wished to reimplement the common law governing landowner's liability. The sponsor of House Bill 1205 stated that the purpose of the bill was to "clarify the reasonable person" standard so that "responsibility falls upon [the] trespasser." To this end, the bill was designed to "reinstate those classifications struck down in 1971." Tape Recordings of House Committee on Agriculture, Livestock, and Natural Resources on H.B. 1205, Feb. 5, 1986, 55th General Assembly. This desire was echoed in the senate. In explaining House Bill 1205 to his colleagues in the senate, one senator stated that "the bill was designed so that if one is trespassing and becomes injured, he basically can't sue." But "if [the person] was invited to help [the landowner] and becomes injured, then he can sue." Summarizing the statute, the senator concluded that "it takes the trespass laws back to 1971 when they were changed." Tape Recordings of Senate Committee on Business Affairs on H.B. 1205, March 17, 1986, 55th General Assembly.

7. *Id.*

8. Tape Recordings of House Committee on Agriculture, Livestock, and Natural Resources on H.B. 1205, Feb. 5, 1986, 55th General Assembly.

9. *See* Tape Recordings of House Committee on Agriculture, Livestock, and Natural Resources on H.B. 1205, Feb. 5, 1986, 55th General Assembly; Tape Recordings of Senate Committee on Business Affairs on H.B. 1205, March 17, 1986, 55th General Assembly.

in 1971" by *Mile High Fence.*[10] Accordingly, we must interpret those classifications created by subsection (3) of section 13–21–115 as reestablishing the common-law classifications of trespasser, licensee, and invitee, if possible.

Under section 13–21–115(3)(a), the responsibility for a trespasser's injury is laid upon the trespasser unless the landowner has willfully or deliberately caused the injury. This result is concordant with the legislature's express desire and the common law as it existed prior to *Mile High Fence.*

Section 13–21–115(3)(b) provides that a licensee may recover for damages caused by (1) "the landowner's deliberate failure to exercise reasonable care in the conduct of the landowner's active operations upon the property," *or* (2) "the landowner's failure to warn of dangers which are not ordinarily present on property of the type involved and of which the landowner actually knew."

On the other hand, section 13–21–115(3)(c) provides that a landowner will be liable to an invitee only for damages caused by the landowner's "deliberate failure to exercise reasonable care to protect against dangers which are not ordinarily present on property of the type involved and of which he actually knew."

A fair reading of these subsections together reveals that the statute accords a higher degree of protection to a licensee than an invitee. For example, a landowner will be liable to a licensee for a deliberate failure to exercise reasonable care in *any* of the landowner's active operations on the land, but will be liable to an invitee only for a deliberate failure to exercise reasonable care with respect to those active operations "which are not ordinarily present on property of the type involved and of which he actually knew." Thus the owner of a railroad switchyard could be held liable for the deliberate failure to exercise reasonable care in the operation of his trains to a licensee (i.e. someone who comes upon the land without invitation and for their own purposes), but not to an invitee.

In addition, a landowner owes a duty to a licensee to warn of dangers not ordinarily present on the land and of which he had actual knowledge, but will be liable to an invitee only for a "deliberate failure" to warn.[11]

The effect of this classification scheme of duties is to impose on landowners a higher standard of care with respect to a licensee than an invitee. Such an inverted hierarchy of duties bears no rational relationship to a legitimate governmental interest, and can be justified neither historically nor logically. Taking the General Assembly at its word, the purpose underlying the enactment of section 13–21–115 was to return landowner's liability to its original state before *Mile High Fence* was decided. Section 13–21–115 does not accomplish this because, under the prior common law in Colorado, invitees were accorded greater protection than licensees. *See Gotch v. K. & B. Packing & Provision Co.* Historically, the common law has imposed a higher standard of care on landowners with respect to invitees than to licensees. *See* W. Keeton, W. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* §§ 60–61, at 412–32 (5th ed. 1984). Finally, any logical hierarchy of duties requires that a landowner take more precautions to protect someone he has invited on the land for the landowner's own purposes (and thus at least impliedly given an assurance of safety), than a person whose presence is

---

10. Tape Recordings of House Committee on Agriculture, Livestock, and Natural Resources on H.B. 1205, Feb. 5, 1986, 55th General Assembly.

11. Subsection (3)(c) does not explicitly impose a duty to warn an invitee of dangers not ordinarily present on the property. However, the phrase "exercise reasonable care to protect against dangers" in subsection (3)(c) is broad enough to encompass the duty to warn of a dangerous condition, as well as a duty to take additional steps to protect an invitee when a warning alone would be insufficient. Under this interpretation, we do not view the omission of the explicit duty to warn an invitee as giving rise to a constitutional deficiency.

only suffered. The statutory limitation of a landowner's liability for injuries to an invitee is fundamentally flawed and cannot be interpreted to fairly allocate responsibility within the limitations imposed by the federal and state constitutional guarantees of equal protection of the law. U.S. Const. amend. XIV, § 1; Colo. Const. art. II, § 25.

We therefore hold that section 13–21–115, 6A C.R.S. (1987),[12] violates both the federal and state constitutional guarantees of equal protection of the laws.[13] Because the trial court instructed the jury on the duties of a landowner under section 13–21–115, we reverse the judgment and remand for a new trial on the issue of liability under those principles of landowner liability to an invitee which existed prior to the enactment of the statute.

**12.** Section 13–21–115 contains no specific severability provision. Therefore, the general severability statute, section 2–4–204, 1B C.R.S. (1980), applies. *High Gear & Toke Shop v. Beacom,* 689 P.2d 624, 633 n. 10 (Colo.1984). Section 2–4–204 provides, in pertinent part:

**Severability of statutory provisions.** If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid, unless it appears to the court that the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; *or unless the court determines that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.*

(Emphasis added.) Thus, we may not sever the invalid subsection (3)(c) "if those unexcised portions of an Act are incomplete and are incapable of being executed in accordance with the

legislative intent," *People v. Vinnola,* 177 Colo. 405, 414, 494 P.2d 826, 830 (1972). *See also Hejira Corp. v. MacFarlane,* 660 F.2d 1356, 1362 (10th Cir.1981). As discussed above, section 13–21–115 was enacted by the General Assembly to restore the principles of landowner liability that existed prior to *Mile High Fence.* Subsections (2) and (4) indicate that the legislature intended that the statute constitute a unitary hierarchical scheme to establish the liability of landowners to any person coming on the land. To sever one provision, and to thereby create an entire class of persons exempt from the statute, would frustrate rather than advance the legislative intent. We believe that the remaining provisions "are incomplete and are incapable of being executed in accordance with the legislative intent." We therefore hold the entire statute invalid.

**13.** We thus decline to follow *Giebink v. Fischer,* 709 F.Supp. 1012, 1018 (D.Colo.1989), insofar as it upheld section 13–21–115(3)(c) under equal protection.