David SCHRECK and Martha Schreck,
Plaintiffs–Appellees,

v.

T & C SANDERSON FARMS, INC., a Colorado corporation; Maragret E. Sanderson, in her individual capacity; and Thomas C. Sanderson, in his individual capacity, Defendants–Appellants.

No. 00CA1453.

Colorado Court of Appeals,
Div. II.

Sept. 27, 2001.

Rehearing Denied Nov. 29, 2001.

Law Office of Christopher T. Dahle, Christopher T. Dahle, Del Norte, CO, for Plaintiffs–Appellees.

Jacobs & Russell, LLC, Richard J. Jacobs, Margaret J. Russell, Alamosa, CO, for Defendants–Appellants.

Opinion by Judge CASEBOLT.

In this action involving a purchase option in a real estate lease, defendants, T & C Sanderson Farms, Inc., Margaret E. Sanderson, and Thomas C. Sanderson, appeal the judgment granting specific performance to plaintiffs, David Schreck and Martha Schreck. We affirm in part and reverse in part.

Plaintiffs leased a portion of defendants' farm for the 1997 crop-growing season. The written agreement provided that the lease would commence on April 1, 1997, continue through harvest in the fall of 1997, and end no later than November 1, 1997. The agreement also contained a provision granting plaintiffs "an exclusive option and [right of first] refusal to purchase at appraised value or at a mutually acceptable price, the leased premises." The leased premises were described as "[t]he SW 1/4 of Section 26, Township 40 North, Range 7 East of the New Mexican Principal Meridian. Excluding the house and out buildings." The agreement did not specifically describe those exclusions.

On October 31, 1997, plaintiffs personally served defendants with written notice of their intent to exercise the option. Defendants refused to honor the exercise of the option, claiming that the lease had expired when the crop harvesting was complete in mid-October. Plaintiffs commenced this proceeding seeking an order of specific performance requiring defendants to convey the property.

On cross-motions for summary judgment, the trial court concluded that the mechanism for fixing the price was sufficiently definite, that the agreement satisfied the statute of frauds, and that plaintiffs' exercise of the option was timely because the option did not expire until November 1, 1997. The court thus denied defendants' motion and granted plaintiffs' motion.

Following a bench trial on the issue of specific performance, the trial court ordered plaintiffs to obtain an appraisal to determine the purchase price. It also required defendants to obtain a survey of the property, file the necessary paperwork for a subdivision exemption, furnish title insurance, and convey the property with a warranty deed at closing. This appeal followed.

I.

Defendants first contend that the trial court erred in concluding on summary judgment that plaintiffs had timely exercised their option. We disagree.

■ Neither party contends that there are genuine issues of material fact. The issue is thus whether plaintiffs were entitled to judgment as a matter of law. We review the trial court's conclusions of law de novo. See Ad Two, Inc. v. City & County of Denver, 9 P.3d 373 (Colo.2000); Mesa County Valley Sch. Dist. No. 51 v. Kelsey, 8 P.3d 1200 (Colo. 2000).

■ A purchase option in a lease is an irrevocable offer to sell the leased property to the lessee for a definite consideration. All that is required for the option to ripen into a binding contract is the lessee's acceptance. Polemi v. Wells, 759 P.2d 796 (Colo.App. 1988).

■ An option must be exercised in strict compliance with its terms. Accordingly, an orally exercised option is not valid if the agreement calls for written exercise. If, however, the agreement prescribes no specific mode of exercise, any method will suffice so long as it manifests the optionee's unconditional decision to exercise. Karakehian v. Boyer, 900 P.2d 1273 (Colo.App.1994), aff'd in part and rev'd in part on other grounds, 915 P.2d 1295 (Colo.1996).

Here, the agreement did not prescribe a particular mode of acceptance, but specifically stated that the lease expired at the end of harvest, which occurred mid-October 1997, and no later than November 1, 1997. It is undisputed that plaintiffs delivered written notice of their intent to exercise the option on October 31, 1997. In addition, however, Martha Schreck's affidavit asserts that they orally informed defendants of their intent to exercise the option at some point during the middle of the growing season. This testimony was uncontradicted.

Therefore, even if we were to assume, without deciding, that the written notice was given after the lease had expired, plaintiffs nonetheless accepted and exercised the option when they orally informed defendants of their exercise of the option during the summer of 1997. See Karakehian v. Boyer, supra. Accordingly, we reject this contention.

## II.

■ Defendants next contend that the trial court erred in characterizing the disputed provision as granting plaintiffs a binding option rather than a right of first refusal. Because defendants did not raise this issue in the trial court, we decline to address it for the first time on appeal. See Gallegos v. Phipps, 779 P.2d 856 (Colo.1989); Weil v. First Nat'l Bank of Castle Rock, 983 P.2d 812 (Colo.App.1999).

## III.

■ Defendants contend that the trial court erred in concluding that the agreement sufficiently addressed the elements necessary to create an enforceable contract for sale. We disagree.

A contract for the sale of land must be in writing and must contain the names of the parties, the terms and conditions, a description of the interest or property, and the consideration. See § 38–10–108, C.R.S.2001; Shull v. Sexton, 154 Colo. 311, 390 P.2d 313 (1964); Ross v. Purse, 17 Colo. 24, 28 P. 473 (1891).

We conclude that the agreement here contained the necessary elements to create an enforceable contract. It included the names of the parties, and it sufficiently described a specific parcel of land that was set off by fences and that plaintiffs had farmed for the 1997 growing season. Although the agreement did not state a definite purchase price, the price term was sufficiently definite because the agreement provided for an appraisal to set the purchase price. See Portnoy v. Brown, 430 Pa. 401, 243 A.2d 444 (1968)(where a contract specifies that the price is to be measured by the "fair market value" or "reasonable value" of the services or property involved, courts have generally held that the price is sufficiently certain to establish an enforceable obligation).

Accordingly, the trial court correctly concluded that the agreement was sufficient to create an enforceable contract.

## IV.

Defendants next contend that, assuming there were a binding and enforceable agreement to sell the property, the trial court nevertheless erred in ordering specific performance. Specifically, defendants contend that the description of the property and the purchase price were too indefinite to support an award of specific performance and that the evidence is insufficient to support the court's decree. We disagree.

A suit for specific performance is an equitable action. *Setchell v. Dellacroce*, 169 Colo. 212, 454 P.2d 804 (1969).

The right to specific performance is not absolute. Whether the remedy should be granted depends upon the equities of the case, *Ide v. Joe Miller & Co.*, 703 P.2d 590 (Colo.App.1984), and rests within the sound discretion of the trial court. *Hill v. Chambers*, 136 Colo. 129, 314 P.2d 707 (1957).

Contracts must be reasonably certain to justify a decree of specific performance. Courts cannot make contracts for parties and then order them specifically performed. *Cox v. Bertsch*, 730 P.2d 889 (Colo. App.1986). Thus, the indefiniteness of a contract is an adequate reason to refuse specific performance. The contract itself must make the precise act to be done clearly ascertainable. It is fundamental that to enable the court to decree specific performance, the terms of the contract must be clear, definite, certain, and complete. *Mestas v. Martini*, 113 Colo. 108, 155 P.2d 161 (1944).

Specific performance, however, may nevertheless be decreed when a contract is uncertain or incomplete in some respects, if the uncertainty or incompleteness relates to matters that the law makes certain or complete by presumption, rule, or custom and usage. *Shull v. Sexton, supra; Ross v. Purse, supra.*

### A.

If the writing contains enough information such that the identity of the premises reasonably can be determined, specific performance may be decreed. *See Mestas v. Martini, supra.* The contract may be specifically enforced when extrinsic evidence is required to supplement, but not when such evidence is required to supply the description of the property involved. *Hill v. Chambers, supra.*

Here, while the agreement described the property in general terms and did not specifically describe the excepted property, at trial the parties did not dispute the extent or actual location of the property included under the lease. Thus, the agreement was not indefinite with regard to the property to be conveyed. Consequently, we perceive no error in the trial court's order of specific performance requiring a survey to be conducted and the legal description as reported by that survey to be included in the deed. *See Shull v. Sexton, supra.*

### B.

As to the purchase price, an agreement is sufficiently definite for an award of specific performance if it provides a method for determining the consideration, even though the precise character or amount thereof is unexpressed. *Ross v. Purse, supra.*

Here, the lease provided that plaintiffs could purchase the property "at appraised value or at a mutually acceptable price."

We conclude that "appraised value" establishes a mechanism for determining the price that is sufficiently definite to support an award of specific performance. *See Estate of Blouin*, 490 A.2d 1212 (Me.1985)("appraised value" is the functional equivalent of "fair value"); *Marder's Nurseries, Inc. v. Hopping*, 171 A.D.2d 63, 573 N.Y.S.2d 990 (N.Y.App.Div.1991)(agreement that set the purchase price at the "fair market value" of the property is sufficiently definite for an order of specific performance); *Portnoy v. Brown, supra.*

### C.

Concerning the sufficiency of the evidence, we conclude that the evidence in the record establishes that the property has

unique qualities such that a decree of specific performance is appropriate.

■ Equity will not decree specific performance of a contract to convey land if there is an adequate remedy at law. *Hill v. Chambers, supra.*

Plaintiffs' testimony established that the location of the property was important to them. It was close to other land they farmed and to the cooling plant they used for their crops. In addition, plaintiffs testified that the soil on this property was particularly suited for the types of crops they produced.

Because the subject property has unique qualities that are important to plaintiffs' farming operations, we perceive no abuse of discretion in the trial court's determination that there was no adequate legal remedy and that the contract should be specifically enforced.

### V.

Defendants assert that the trial court erred in requiring them to obtain a survey, subdivision exemption, and title insurance. We agree in part.

The agreement was silent regarding the relative responsibilities of the parties in completing the sale. However, the court noted that defendants were required by law to obtain a survey and subdivision exemption for the property and to transfer marketable title. Thus, when allocating the burdens of the sale, the court ordered defendants to complete the survey, obtain an exemption for the property, purchase title insurance, and supply a warranty deed at closing.

■ Concerning the survey and subdivision exemption, the trial court concluded that § 30–28–110(4), C.R.S.2001, which prohibits the sale of subdivided property if the subdivision creates parcels smaller than thirty-five acres, places the burden of obtaining a survey and exemption on the seller. Accordingly, the court ordered defendants to pay for the survey and file the necessary paperwork for the exemption.

However, to the contrary, § 30–28–110(4) only prohibits the sale of certain subdivided parcels of land and does not address who

bears the burden of obtaining the exemption. Nevertheless, because the trial court possesses broad discretion in fashioning an equitable remedy, we perceive no abuse of discretion in the trial court's order requiring defendants to bear the cost of the survey and the responsibility for obtaining the exemption.

■ Concerning title insurance and marketable title, the trial court correctly noted that in every contract for the sale of real estate it is implied that the seller will, before the completion of the contract, show a good and marketable title. *Federal Farm Mortg. Corp. v. Schmidt,* 109 Colo. 467, 126 P.2d 1036 (1942); *Taylor v. Williams,* 2 Colo.App. 559, 31 P. 504 (1892). The purchaser is responsible for examining the title and informing seller of any defects. It is then up to the seller to correct the defects. *Mitchell v. Evans,* 150 Colo. 568, 375 P.2d 101 (1962). Thus, we agree with the trial court that defendants must transfer marketable title at closing.

■ However, the parties have not cited, nor have we found, any requirement in the law that the seller must provide title insurance. Consequently, because the contract did not specifically require defendants to purchase such insurance, we conclude that the trial court abused its discretion in ordering defendants to obtain title insurance. Accordingly, that portion of the judgment directing defendants to purchase title insurance cannot stand.

### VI.

Lastly, defendants contend that, because the property was owned by T & C Sanderson, Inc., the trial court erred by including Margaret and Thomas Sanderson, individually, in the judgment. However, we note that Margaret and Thomas Sanderson signed the lease agreement in their individual capacities, not as corporate officers. And, although the Sandersons now assert that the corporation owns the property, they nevertheless were individually named in the complaint, appeared before the trial court in their individual capacities, and did not assert in the trial court that they should be excluded from the

judgment. Thus, we decline to address this contention, which is raised for the first time on appeal. *See Gallegos v. Phipps, supra.*

That part of the judgment requiring defendants to provide title insurance is reversed. The balance of the judgment is affirmed.

Judge PLANK and Judge NEY concur.